THE STATE OF OHIO, APPELLANT, *v.* CHANDLER, APPELLEE.

THE STATE OF OHIO, APPELLANT, *v.* BLEDSOE, APPELLEE.

[Cite as *State v. Chandler,* 109 Ohio St.3d 223, 2006-Ohio-2285.]

224

Lanzinger, J.

{¶ 1} These consolidated discretionary appeals raise the issue of whether a person can be subject to the special penalty statute applicable to a major drug offender for a first-degree felony drug conviction when the substance offered as crack cocaine contains no detectable amount of the drug.

{¶ 2} Appellee Phillip Bledsoe was the subject of an undercover investigation conducted by the Massillon City Police Department and the FBI. During the investigation, a confidential informant was used to make a number of controlled buys of crack cocaine from Bledsoe. The last of these transactions was to occur on July 1, 2003, when the informant telephoned Bledsoe and negotiated a purchase of five ounces of crack cocaine for $8,000. As part of the set-up, before the meeting, an undercover officer hid himself in the informant's vehicle with audio and video equipment to allow him to witness and record the transaction.

{¶ 3} By telephone, Bledsoe arranged a place to exchange the money and drugs. At the agreed location, however, appellee Kenyan Chandler arrived instead of Bledsoe. The informant immediately telephoned Bledsoe for assurance and was told that Chandler was Bledsoe's brother. Chandler entered the vehicle and produced a package containing a wet, white substance resembling freshly made crack cocaine. Chandler was arrested, and the package was confiscated. Later testing revealed that the package's substance consisted of over 100 grams of baking soda.

{¶ 4} Based on this transaction, Bledsoe and Chandler were each indicted on charges of trafficking in cocaine in violation of R.C. 2925.03(A)(1) and 2925.03(C)(4)(g), the penalty section for offenses involving 100 or more grams of

crack cocaine. At separate trials, juries found appellees guilty of trafficking in crack cocaine. They also found by separate verdict that the amount of the drug involved in the offense equaled or exceeded 100 grams of crack cocaine. Each appellee was sentenced pursuant to R.C. 2925.03(C)(4)(g).

{¶ 5} Chandler and Bledsoe appealed their convictions to the Fifth District Court of Appeals.[1] The appellate court reversed Chandler's conviction after holding that the state must prove both the identity of the controlled substance and a detectable amount of that substance to sustain a conviction under R.C. 2925.03(A) and a penalty under 2925.03(C)(4)(g). *State v. Chandler*, 157 Ohio App.3d 672, 2004-Ohio-3436, 813 N.E.2d 65, at ¶ 29. Since the substance offered for sale did not contain any detectable amount of a controlled substance, the jury should not have found that the amount of crack cocaine involved in the offense equaled or exceeded 100 grams. As a result, the trial court could not sentence Chandler under R.C. 2925.03(C)(4)(g).

{¶ 6} The Fifth District also reversed Bledsoe's trafficking-in-cocaine conviction under R.C. 2925.03(A)(1) and his sentence under 2925.03(C)(4)(g). *State v. Bledsoe*, 5th Dist. No. 2003CA00403, 2004-Ohio-4764, 2004 WL 2002855. The appellate court held that it is immaterial that the substance offered for sale was not actually a controlled substance for purposes of a conviction under R.C. 2925.03(A)(1). However, as R.C. 2925.03(C)(4)(g) did not provide a penalty for offering to sell a substance that is purported to be crack cocaine but does not contain any detectable amount of the drug, the trial court erred by submitting to the jury the issue of the amount of the drug involved, because there was no detectable amount of any controlled substance.

{¶ 7} We accepted both discretionary appeals.

{¶ 8} When interpreting a statute, a court must look to the language of the statute, giving effect to the words used and not deleting or inserting any words. *Rice v. CertainTeed Corp.* (1999), 84 Ohio St.3d 417, 419, 704 N.E.2d 1217. We must give effect to all the provisions, including the penalty for the specific crime. R.C. 2925.03(A)(1) states that no person shall knowingly "[s]ell or offer to sell a controlled substance." The penalty provisions are found in R.C. 2925.03(C)(1) through (7)[2] and depend upon the identity and amount of the substance involved in the crime.

---

1. Bledsoe's other convictions and sentences for earlier controlled buys are not before us.

2. See penalties for nonspecified Schedule I or II drugs, R.C. 2925.03(C)(1)(a) through (f); Schedule III, IV, or V drugs, 2925.03(C)(2)(a) through (e); marihuana, 2925.03(C)(3)(a) through (g); cocaine, 2925.03(C)(4)(a) through (g); L.S.D., 2925.03(C)(5)(a) through (g); heroin, 2925.03(C)(6)(a) through (g); and hashish, 2925.03(C)(7)(a) through (f).

{¶ 9} Undoubtedly, a person can be convicted for offering to sell a controlled substance in violation of R.C. 2925.03(A)(1) without actually transferring a controlled substance to the buyer. *State v. Patterson* (1982), 69 Ohio St.2d 445, 23 O.O.3d 394, 432 N.E.2d 802, syllabus. Therefore, there is no doubt that appellees' convictions can stand despite the fact that the substance offered as crack cocaine was actually baking soda. We agree with the dissents on this point. The issue before this court, however, is whether R.C. 2925.03(C)(4)(g), the specific section relating to major-drug-offender penalties, provides a penalty for offering to sell crack cocaine when the substance offered as crack cocaine does not actually contain *any* detectable amount of the drug. This is not a "red herring" but the crucial question we are to examine.

{¶ 10} The cases relied upon by the state, *State v. Mughni* (1987), 33 Ohio St.3d 65, 514 N.E.2d 870, *State v. Scott* (1982), 69 Ohio St.2d 439, 23 O.O.3d 390, 432 N.E.2d 798, and *State v. Patterson*, 69 Ohio St.2d 445, 23 O.O.3d 394, 432 N.E.2d 802, were decided before the passage of Am.Sub.S.B. No. 2, 146 Ohio Laws, Part IV, 7136, effective July 1, 1996. Senate Bill 2 revamped Ohio's felony-sentencing laws and created R.C. 2929.14(D)(3), the additional penalty applicable to major drug offenders to which R.C. 2925.03(C)(4)(g) specifically refers. See 146 Ohio Laws, Part IV, 7468.

{¶ 11} In *State v. Mughni*, 33 Ohio St.3d 65, 514 N.E.2d 870, we simply determined that knowingly selling or offering to sell a controlled substance, R.C. 2925.03(A)(1), and knowingly selling or offering to sell a counterfeit controlled substance, R.C. 2925.37(B), are not allied offenses of similar import. Id. at syllabus. We did not address the statutory requirement that a certain amount of the prohibited substance must be found within the substance offered for sale.

{¶ 12} The penalty provision that relates to drug-trafficking cases, R.C. 2925.03(C)(4), states at the outset: "If the drug involved in the violation is cocaine *or a compound, mixture, preparation, or substance containing cocaine*, whoever violates division (A) of this section is guilty of trafficking in cocaine. The penalty for the offense shall be determined as follows [setting forth the various penalties]." (Emphasis added.)

{¶ 13} Unless other specific portions of the section apply, trafficking in cocaine is a fifth-degree felony, and there is no presumption for a prison term. R.C. 2925.03(C)(4)(a). The penalty is raised one degree "if the offense was committed in the vicinity of a school or in the vicinity of a juvenile." R.C. 2925.03(C)(4)(b), (c), (d) and (e). If the amount of the drug involved "equals or exceeds five grams but is less than ten grams of cocaine that is not crack cocaine [i.e., the drug is powder cocaine rather than rock cocaine] or equals or exceeds one gram but is less than five grams of crack cocaine," trafficking in cocaine is a fourth-degree felony, and there is a presumption for a prison term. R.C. 2925.03(C)(4)(c). If

the amount is ten grams or more but less than 100 grams of powder cocaine (or five grams or more but less than ten grams of crack cocaine), the offense is a third-degree felony with a mandatory prison term. R.C. 2925.03(C)(4)(d). If the amount is 100 grams or more but less than 500 grams of powder cocaine (or ten grams or more but less than 25 grams of crack cocaine), the offense is a second-degree felony with a mandatory prison term. R.C. 2925.03(C)(4)(e).

{¶ 14} If the amount is 500 grams or more but less than 1,000 grams of powder cocaine (or 25 grams or more but less than 100 grams of crack cocaine), the offense is a first-degree felony, and the court shall impose a mandatory prison term. R.C. 2925.03(C)(4)(f).

{¶ 15} The penalty section at issue here, R.C. 2925.03(C)(4)(g), states: "If the amount of the drug involved equals or exceeds one thousand grams of cocaine that is not crack cocaine or equals or exceeds one hundred grams of crack cocaine and regardless of whether the offense was committed in the vicinity of a school or in the vicinity of a juvenile, trafficking in cocaine is a felony of the first degree, *the offender is a major drug offender, and the court shall impose as a mandatory prison term the maximum prison term prescribed for a felony of the first degree and may impose an additional mandatory prison term* prescribed for a major drug offender under division (D)(3)(b) of section 2929.14 of the Revised Code." (Emphasis added.) Thus, this section provides a specific penalty enhancement.

{¶ 16} The appellees were charged with violating R.C. 2925.03(A)(1), and the court of appeals properly held that the state was required to prove the identity of the substance as well as a detectable amount of that substance, not for conviction, but to impose the penalty enhancement of R.C. 2925.03(C)(4)(g). The jury's finding that the amount of the drug equaled or exceeded 100 grams of crack cocaine was contrary to fact, for the substance involved was 130.87 grams of baking soda.

{¶ 17} The major-drug-offender penalty that is referred to in R.C. 2925.03(C)(4)(g) is found in R.C. 2929.14(D)(3) and contains two parts. Subsection (a) states that if the offender violates R.C. 2925.03 and is classified as a major drug offender, "the court shall impose * * * a ten-year prison term" that may not be reduced by a judicial release. The second part, R.C. 2929.14(D)(3)(b), provides, "The court imposing a prison term on an offender under division (D)(3)(a) of this section may impose an additional prison term of one, two, three, four, five, six, seven, eight, nine, or ten years" under certain conditions. In *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, we held that R.C. 2929.14(D)(3)(b) is unconstitutional under *Apprendi v. New Jersey* (2000), 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435, and *Blakely v. Washington* (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, because it required judicial factfinding before an additional ten years of prison could be imposed. Id. at paragraph five

of the syllabus. We severed R.C. 2929.14(D)(3)(b) to remedy the constitutional violation. Id. at paragraph six of the syllabus. As the statute now stands, a major drug offender still faces the mandatory maximum ten-year sentence that the judge must impose and may not reduce. Only the add-on that had required judicial fact-finding has been severed. Id.

{¶ 18} The General Assembly has authorized a hierarchy of criminal penalties for drug trafficking based upon the identity and amount of the controlled substance involved. By the terms of the penalty statute for cocaine, R.C. 2925.03(C)(4), the substance involved in the violation is to *be* cocaine or, at the very least, "a compound, mixture, preparation, or substance *containing* cocaine." (Emphasis added.) This language presumes that a detectable amount of cocaine is present within the substance before the penalty enhancement applies.

{¶ 19} In this case, the jury found that 130.87 grams of baking soda equaled or exceeded 100 grams of crack cocaine. Testing had already revealed the substance to be baking soda. Holding that the penalty enhancement for a major drug offender applies when any substance over 100 grams—baking soda, face powder, powdered sugar, or the like—is represented to be "crack cocaine" contradicts the statute.

{¶ 20} The General Assembly has already specifically proscribed the activity present in this case as trafficking in counterfeit controlled substances. R.C. 2925.37(B) provides that "[n]o person shall knowingly make, sell, offer to sell, or deliver any substance that the person knows is a counterfeit controlled substance." A violation of this section is classified as a felony of the fourth or fifth degree, and a conviction does not depend upon proof of the quantity of the fraudulent substance. R.C. 2925.37(H). Suspension of an offender's driver's license and the reporting of a conviction to professional licensing authorities are included as sanctions for that offense. R.C. 2925.37(L); R.C. 2925.38.

{¶ 21} We hold that the statute is clear and that a substance offered for sale must contain some detectable amount of the relevant controlled substance before a person can be sentenced as a major drug offender under R.C. 2925.03(C)(4)(g).

{¶ 22} Accordingly, we affirm the judgments of the court of appeals.

Judgments affirmed.

MOYER, C.J., PFEIFER and O'DONNELL, JJ., concur.

RESNICK, LUNDBERG STRATTON and O'CONNOR, JJ., dissent.

_____

ALICE ROBIE RESNICK, J., dissenting.

{¶ 23} I strongly disagree with the majority's conclusion that R.C. 2925.04(C)(4)(g) requires that a substance offered for sale must contain some

detectable amount of the relevant controlled substance before a person can be sentenced as a major drug offender under the statute.

{¶ 24} R.C. 2925.03(A) provides:

{¶ 25} "No person shall knowingly * * *:

{¶ 26} "(1) Sell or *offer* to sell a controlled substance."   (Emphasis added.)

{¶ 27} R.C. 2925.03(C) states:

{¶ 28} "Whoever violates division (A) of this section is guilty of one of the following:

{¶ 29} " * * *

{¶ 30} "(4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of trafficking in cocaine.   The penalty for the offense shall be determined as follows:

{¶ 31} " * * *

{¶ 32} "(g) If the amount of the drug involved equals or exceeds one thousand grams of cocaine that is not crack cocaine or equals or exceeds one hundred grams of crack cocaine and regardless of whether the offense was committed in the vicinity of a school or in the vicinity of a juvenile, trafficking in cocaine is a felony of the first degree, the offender is a major drug offender, and the court shall impose as a mandatory prison term the maximum prison term prescribed for a felony of the first degree * * *."

{¶ 33} In construing a statute, a court must ascertain the intent of the legislature.   *In re Guardianship of Lombardo* (1999), 86 Ohio St.3d 600, 604, 716 N.E.2d 189, citing *State ex rel. Sinay v. Sodders* (1997), 80 Ohio St.3d 224, 227, 685 N.E.2d 754.   In determining intent, a court must look to the language of the statute, giving effect to the words used and not deleting or inserting any words. *Rice v. CertainTeed Corp.* (1999), 84 Ohio St.3d 417, 419, 704 N.E.2d 1217; *Cline v. Ohio Bur. of Motor Vehicles* (1991), 61 Ohio St.3d 93, 97, 573 N.E.2d 77. Further, since words in a statute do not exist in a vacuum, they must be read in context of the whole statute.   *D.A.B.E., Inc. v. Toledo–Lucas Cty. Bd. of Health,* 96 Ohio St.3d 250, 2002-Ohio-4172, 773 N.E.2d 536, at ¶ 19;   *Commerce & Industry Ins. Co. v. Toledo* (1989), 45 Ohio St.3d 96, 102, 543 N.E.2d 1188. Unfortunately, the majority fails to examine the language of R.C. 2925.03(C)(4)(g) in the context of the whole statute.

{¶ 34} This court previously characterized R.C. Chapter 2925 as "strong legislation" through which the General Assembly "has attempted to extirpate the malevolent traffic in drugs within Ohio." *State v. Patterson* (1982), 69 Ohio St.2d 445, 447, 23 O.O.3d 394, 432 N.E.2d 802.   The statute demonstrates a clear legislative intent to criminalize any participation in the commerce of controlled

substances. Id.; *State v. Scott* (1982), 69 Ohio St.2d 439, 440, 23 O.O.3d 390, 432 N.E.2d 798.

{¶ 35} It is well established that a person can be convicted for offering to sell a controlled substance in violation of R.C. 2925.03(A)(1) without actually transferring a controlled substance to the buyer. Id. at syllabus; *Patterson*, 69 Ohio St.2d at 446, 23 O.O.3d 394, 432 N.E.2d 802; *State v. Mughni* (1987), 33 Ohio St.3d 65, 514 N.E.2d 870, fn. 1. We have previously held that the offense is complete under R.C. 2925.03(A)(1) when a person knowingly offers to sell a controlled substance. *Mughni*, 33 Ohio St.3d at 68, 514 N.E.2d 870. The conduct proscribed by the statute is *offering to sell* a controlled substance, not offering the controlled substance. *Scott*, 69 Ohio St.2d at 440, 23 O.O.3d 390, 432 N.E.2d 798. Reading R.C. 2925.03 as a whole, it is clear that in the context of a conviction for *offering to sell* a controlled substance in violation of R.C. 2925.03(A)(1), the "drug involved in the violation" language of R.C. 2925.03(C)(4)(g) refers to the terms of the offer, i.e., the identity and the amount of the drug *offered.*

{¶ 36} The majority claims that the jury in these cases "found that 130.87 grams of baking soda equaled or exceeded 100 grams of crack cocaine." However, that is not what the jury found in these cases. Rather, the jury in each case found that the appellees were guilty of trafficking in crack cocaine and that the amount of the drug *involved* in the offense equaled or exceeded 100 grams of crack cocaine. R.C. 2925.03(C) clearly provides that if the "drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine" in an amount that "equals or exceeds one hundred grams of crack cocaine," the offense of trafficking in cocaine is a felony of the first degree. R.C. 2925.03(C)(4) and (C)(4)(g). With respect to appellees' cases, the violation is appellees' knowing offer to sell in an amount that equals or exceeds 100 grams of crack cocaine.

{¶ 37} The majority incorrectly concludes that an alternative statute, R.C. 2925.37(B), specifically proscribes the activity presented in this case as trafficking in counterfeit substances. As the majority concedes, this court has previously established that knowingly offering to sell a controlled substance, R.C. 2925.03(A)(1), and knowingly offering to sell a counterfeit controlled substance, R.C. 2925.37(B), are not allied offenses of similar import. *Mughni*, 33 Ohio St.3d 65, 514 N.E.2d 870, syllabus. When appellees knowingly offered to sell crack cocaine, a controlled substance, their offense was complete under R.C. 2925.03(A)(1). However, proof of knowledge of the counterfeit character of the substance offered is necessary for conviction under R.C. 2925.37(B). Id. at 68, 514 N.E.2d 870. In these cases, the state did not present evidence of any knowledge of the counterfeit nature of the substance and did not seek to

prosecute the appellees under R.C. 2925.37(B). As was its right, the state chose to prosecute the appellees for knowingly offering to sell crack cocaine in violation of R.C. 2925.03(A)(1).

{¶ 38} In light of the precedent of this court and the language of the statute itself, we should not now read into R.C. 2925.03(A)(1) and 2925.03(C)(4)(g) any requirement that a detectable amount of the controlled substance offered for sale must be transferred. In order to sustain a conviction and sentence under R.C. 2925.03(A)(1) and 2925.03(C)(4)(g) for the offense of trafficking in cocaine based on an offer to sell a controlled substance, the state must prove a knowing offer and the terms of that offer—i.e., the identity and the amount of the controlled substance offered. In these appeals, the jury in each case found that the state proved that each appellee offered to sell crack cocaine in an amount that equaled or exceeded 100 grams of crack cocaine. Thus, R.C. 2925.03(C)(4)(g) applies and provides that the trial court must sentence each appellee to the maximum prison term prescribed for a first degree felony.

{¶ 39} Accordingly, I would reverse the judgments of the court of appeals.

LUNDBERG STRATTON and O'CONNOR, JJ., concur in the foregoing dissenting opinion.

---

O'CONNOR, J., dissenting.

{¶ 40} I strongly disagree with the majority's conclusion that R.C. 2925.03(C)(4)(c) through (g) requires that the substance offered actually be cocaine in order to support a penalty enhancement beyond the default fifth-degree felony contained in R.C. 2925.03(C)(4)(a).

{¶ 41} The majority fails to read R.C. 2925.03 in its entirety. As stated in Justice Resnick's dissent, the intent of the legislature must be determined by the language of the statute. The statute must not be read in a vacuum, but must be read in the context of the whole statute.

{¶ 42} R.C. 2925.03(A) states:

{¶ 43} "No person shall knowingly do any of the following:

{¶ 44} "(1) Sell or offer to sell a controlled substance."

{¶ 45} This statute criminalizes equally the act of selling a controlled substance and offering to sell a controlled substance. The General Assembly's enactment of R.C. 2925.03 is designed to penalize both actual drug trafficking and offers to engage in drug trafficking. The statute considers them equivalent, as they are written under the same subsection, and the penalty provisions make no separate distinction.

{¶ 46} Our longstanding precedent has not required transfer of a controlled substance to the buyer in order to support a trafficking conviction. *State v. Scott* (1982), 69 Ohio St.2d 439, 440, 23 O.O.3d 390, 432 N.E.2d 798; *State v. Patterson* (1982), 69 Ohio St.2d 445, 446, 23 O.O.3d 394, 432 N.E.2d 802; *State v. Mughni* (1987), 33 Ohio St.3d 65, 66, 514 N.E.2d 870, fn. 1. We have noted that the trafficking conviction is completed upon the knowing offer to sell a controlled substance. Id. at 67–68, 514 N.E.2d 870.

{¶ 47} The majority correctly states that *Mughni* and its predecessors were decided before the revision of R.C. 2925.03 and the major-drug-offender specification to which R.C. 2925.03(C)(4)(g) specifically refers. However, these cases, with the precedent contained within them concerning the effect of offers and the presence (or lack thereof) of actual drugs at the time of the offer, have been unaltered by the General Assembly in any of these revisions.

{¶ 48} R.C. 2925.03(C) defines the individual trafficking crimes based on the controlled substances offered and prescribes the appropriate penalties ("Whoever violates division (A) of this section is guilty of one of the following").

{¶ 49} R.C. 2925.03(C)(4) states:

{¶ 50} "*If the drug involved in the violation* is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of trafficking in cocaine. The penalty for the offense shall be determined as follows [listing the various penalties]." (Emphasis added.)

{¶ 51} The operative language in R.C. 2925.03(C)(4)(g), the provision at issue in today's holding, states:

{¶ 52} "*If the amount of the drug involved* equals or exceeds one thousand grams of cocaine that is not crack cocaine or equals or exceeds one hundred grams of crack cocaine * * *, trafficking in cocaine is a felony of the first degree, [and] the offender is a major drug offender * * *." (Emphasis added.)

{¶ 53} The majority opinion concludes that the language of R.C. 2925.03(C)(4) is satisfied and that the "drug involved in the violation" is cocaine or a compound, mixture, preparation, or substance containing cocaine. However, the majority goes on to hold in a contradictory fashion that R.C. 2925.03(C)(4)(g) requires in excess of 100 grams of actual crack cocaine. In the instant case, the majority held that R.C. 2925.03(C)(4)(g) was not satisfied because the "drugs" sold were actually baking soda.

{¶ 54} The majority opinion acknowledges that the statute must be interpreted by its language, but fails to do so. In R.C. 2925.03(C)(4), and indeed in every numeric subsection of R.C. 2925.03(C), the statute refers to the "drug involved" as defining the specific crime of trafficking. Every penalty enhancement referred to in R.C. 2925.03(C)(4)(c) through (g), and the corresponding provisions

elsewhere in R.C. 2925.03(C), refer to the "amount of the drug involved" in determining whether the penalty should be enhanced. The statute always presumes that a drug is "involved" for a conviction to occur and a sentence to be prescribed. The majority's analysis cannot properly identify what amount exists to support the conviction.

{¶ 55} The majority holds, without analysis, that the penalty statute "presumes that a detectable amount of the controlled substance is present." There is no authority for this singular position, and indeed, none is cited. The "amount of the drug involved" is more properly construed as the "amount of the drug involved in the offer," at which time the trafficking crime is complete, *Mughni*, 33 Ohio St.3d at 67–68, 514 N.E.2d 870, and without which the sale cannot occur.

{¶ 56} The majority's interpretation totally ignores one crucial aspect of the hierarchy of criminal penalties for drug trafficking based upon the identity and amount of the controlled substance involved. R.C. 2925.03(A)(1) criminalizes both selling and an *"offer to sell."* (Emphasis added.) Under long-standing precedent, as described above, a criminal offer to sell may occur and be completed with no transfer and, indeed, no evidence of the presence of any controlled substance. The penalty statutes are the same for both an offer and a sale and make no distinction between an offer of a controlled substance that turns out to be an actual controlled substance and an offer of a controlled substance that turns out to be a harmless surrogate. The presence of baking soda apparently is the "red herring" that has led to the majority's flawed reasoning.

{¶ 57} Under the majority's holding today, every offer to sell a controlled substance when the substance is not actually controlled is presumed to draw the minimum available penalty, which can be enhanced only by using factors other than calculation of the amount. As described above, this holding is logically inconsistent with the language of the statute and thwarts the practical and regular implementation of R.C. 2925.03 as detailed below.

{¶ 58} In *State v. Pimental*, 8th Dist. No. 84034, 2005-Ohio-384, 2005 WL 273009, the defendant was convicted of trafficking cocaine with a major-drug-offender specification pursuant to R.C. 2925.03(C)(4)(g) solely as a result of his telephone conversations with a confidential informant arranging the deal, followed by his arrival at the informant's prearranged location. Although Pimental did not raise the specific issue as error before the court today, he did challenge the manifest weight of the evidence presented.

{¶ 59} In *State v. Jeter*, 6th Dist. No. E–02–047, 2004-Ohio-1332, 2004 WL 541527, a defendant was charged with and convicted of a first-degree felony (pursuant to R.C. 2925.03(C)(6)(e)) for trafficking in heroin based on his agreement to sell one ounce of heroin to an undercover officer in the vicinity of a school. The defendant accepted money for the deal and pointed to the car in

which the drugs were contained. No drugs were ever recovered. Again, Jeter did not challenge the enhancement of his sentence to a first-degree felony. He did, however, challenge the sufficiency of the evidence. The court affirmed the jury's verdict.

{¶ 60} Defendants are regularly charged with, convicted of, and sentenced for trafficking, and their penalties are enhanced based on the classification of drugs offered and the quantity of those drugs discussed in the offer when the drugs were never recovered, when no drugs were ever present, and when no drugs were actually transferred.

{¶ 61} The majority's holding today gives two drug dealers a free pass where none was intended. The majority's holding will eviscerate the ability to properly sentence serious criminals for serious crimes and will encourage drug transactions to be completed in new and creative ways, such that if the dealer is caught, the drugs are not discovered. If the drugs cannot be discovered, only the minimum penalty may be imposed. Today's decision is incorrect and benefits only the criminals.

{¶ 62} Accordingly, the judgment of the court of appeals should be reversed.

RESNICK and LUNDBERG STRATTON, JJ., concur in the foregoing dissenting opinion.

---

John D. Ferrero, Stark County Prosecuting Attorney, Kathleen O. Tatarsky, and Amy S. Andrews, Assistant Prosecuting Attorneys, for appellant.

Fredrick M. Pitinii, for appellee Kenyan Chandler, in case No. 2004–1325.

George Urban, for appellee Phillip Bledsoe, in case No. 2004–1746.

Jim Petro, Attorney General, Douglas R. Cole, State Solicitor, and Franklin E. Crawford, Deputy Solicitor, urging reversal for amicus curiae Ohio Attorney General.

David H. Bodiker, Ohio Public Defender, and Katherine A. Szudy, Assistant State Public Defender, urging affirmance for amicus curiae Ohio Public Defender in case No. 2004–1325.

William F. Schenck, Greene County Prosecuting Attorney, and Cheri L. Stout, Assistant Prosecuting Attorney, urging reversal for amicus curiae Ohio Prosecuting Attorneys Association in case No. 2004–1746.