[Cite as *State v. Williamson*, 2010-Ohio-5060.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,               CASE NO. 9-10-11

    v.

DARIO WILLIAMSON aka CHAMP,        O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Marion County Common Pleas Court
Trial Court No. 08-CR-161

**Judgment Affirmed**

Date of Decision:   October 18, 2010

APPEARANCES:

    *Kevin P. Collins* for Appellant

    *Brent Yager* for Appellee

**SHAW, J.**

{¶1} The defendant-appellant, Dario Williamson, aka Champ ("Williamson") appeals the January 19, 2010 judgment of the Common Pleas Court of Marion County, Ohio, denying his motion to withdraw his guilty plea.

{¶2} The facts relevant to this appeal are as follows. On April 16, 2008, Williamson was indicted on three counts: Count One, Aggravated Trafficking in Drugs in violation of R.C. 2925.03(A)(1), (C)(1), a felony of the second degree; Count Two, Aggravated Trafficking in Drugs within 100 feet of a juvenile or within view of a juvenile in violation of R.C. 2925.03(A)(1), (C)(1), a felony of the first degree; and Count Three, Trafficking in Cocaine within 100 feet of a juvenile or within view of a juvenile in violation of R.C. 2925.03(A)(1), (C)(4), a felony of the first degree. Count One specifically alleged that Williamson

> **did knowingly sell of offer to sell a controlled substance, and the drug involved in the violation is any compound, mixture, preparation, or substance included in schedule I or schedule II, with the exception of marihuana, cocaine, LSD, heroin, and hashish, and the amount of the drug involved equals or exceeds five times the bulk amount.**

{¶3} Initially, Williamson entered pleas of not guilty as to each count, and the matter proceeded to the discovery phase. The defendant requested a bill of particulars, which was provided in July of 2008. As to Count One, the bill of particulars stated,

> **Defendant sold and offered to sell 100 doses of ecstasy, a Schedule I controlled substance for $850.00 to a confidential operative working under the supervision of officers with the MARMET Drug Task Force. The exchange of drugs for money took place on February 22, 2008 \* \* \* at the BP Station on Detroit Avenue of I-75, Toledo, Ohio. The transaction was arranged in telephone conversations between the Defendant and the operative (initially in Marion) which took place on February 22, 2008[.]**

The other two counts in the indictment were alleged to have arisen out of a transaction occurring the following week in much the same manner as Count One. In that transaction, Williamson was alleged to have sold and offered to sell approximately twenty-seven grams of crack cocaine in addition to 100 doses of ecstasy.

{¶4} On July 30, 2008, Williamson withdrew his previously tendered pleas of not guilty on each count of the indictment and indicated that he wanted to plead guilty to those same charges. In exchange, the State agreed to recommend three years of imprisonment on each count with Counts One and Two to run consecutively to one another but concurrently to Count Three for an aggregate prison term of six years. The State also acknowledged that Williamson would be requesting a pre-sentence investigation and asking the trial court to impose a lesser sentence.

{¶5} The trial court proceeded to conduct a Crim.R. 11 plea colloquy with Williamson, including advising him that Count One, a second degree felony,

carried a potential penalty of two to eight years in prison and Counts Two and Three, both first degree felonies, carried potential penalties of three to ten years. The trial court also informed Williamson that the allegations in Count One were that he "did knowingly sell or offer to sell a controlled substance, and the drug involved in the violation is any compound, mixture, preparation, or substance included in schedule I or schedule II * * * and the amount of the drug involved equals or exceeds five times the bulk amount." The trial court then had the prosecutor recite for the record what the evidence would be if the matter proceeded to trial. During this recitation, the prosecutor stated as to Count One,

> **the State would show that on February 22, 2008, the Defendant sold 100 doses of Ecstasy, which is a Schedule 1 drug to a confidential operative, an undercover officer, for $850.00. The actual sale itself took place at a BP station on Detroit Avenue off of I-75 in Toledo, Ohio, Lucas County, Ohio. However, the phone call setting up the transaction was between the confidential operative who was located in Marion, Ohio cooperating with MARMET Officers, and he phoned the Defendant who was located in Toledo. They then made arrangements to meet. * * ***

(Plea Hrg., 7/30/08, at p. 10.) Williamson then pled guilty to all three offenses, and the court accepted his pleas.

{¶6} Sentencing in this case occurred on September 11, 2008, and Williamson was sentenced to three years on each count with Counts One and Two being run consecutively to one another but concurrently to Count Three for an aggregate sentence of six years, all of which were mandatory.

{¶7} One year later, on September 11, 2009, Williamson filed a motion to withdraw his guilty pleas on all three counts. The basis for Williamson's motion was that the lab results of the substance at issue in Count One revealed that the substance Williamson sold was methamphetamine rather than ecstasy as alleged. Williamson also asserted in his motion that the amount of methamphetamine that was found would have resulted in a felony of the fifth degree rather than a second degree felony as he was charged.

{¶8} A hearing was held on this motion on January 11, 2010. During the hearing, Renee Potts, the prosecutor assigned to the case at the time of the pleas, Tom Mathews, the defense attorney who represented Williamson at the time of his pleas, and Williamson, himself, testified. A number of exhibits were also admitted at the hearing. One exhibit, marked Defendant's Exhibit 4, was a laboratory report from the Bureau of Criminal Identification and Investigation ("BCI"). This report indicated that it was prepared on April 15, 2008, by Scott Dobransky, whose signature appeared on the document, and showed that the substances tested in Williamson's case totaled 31.9 grams of methamphetamine. It was also stamped "Received April 30, 2008." Potts testified that the stamp was made by the prosecutor's office and would indicate the date on which the office received the report. She also testified that she did not recall seeing that report. However, she went onto a BCI website that allowed prosecutors to download and print BCI

reports and printed the same report, absent Dobransky's signature, and provided that in discovery to Mathews on July 11, 2008. This report was admitted as State's Exhibit 1. Nevertheless, Potts testified that she did not realize that the lab results revealed that the substance at issue in Count One was methamphetamine rather than ecstasy as charged.

{¶9} Mathews testified that his file in Williamson's case contained a copy of State's Exhibit 1, the unsigned report from BCI that indicated the drugs at issue were methamphetamine. Mathews further testified that he did not recall noticing that the substance at issue in Count One was methamphetamine rather than ecstasy or having discussions with the prosecutor or his client about this. Mathews also testified that he did not know how much that would have meant to him even if he had noticed because there was an offer to sell ecstasy and because of the substantial prison time that his client was facing on all of three counts. Mathews specifically testified,

> **With the other counts he was facing, and, you know, we got the minimum on all of 'em, I would have still recommended, you know, that he accept the plea negotiations whether he would have wanted to do that I don't know, I would have still – you know, in light of everything that's been brought to my attention here today as far as what I would have told him to do wouldn't have been any different than what he ended up doing.**

(Motion Hrg., 1/11/10, at pp. 34-35.) Mathews further testified that his practice is to make copies of whatever he receives from the prosecution and to give those

documents to his clients, especially clients that are in jail, like Williamson was during Mathews' representation of him. However, Mathews was not able to specifically recall doing that in Williamson's case.

{¶10} Williamson testified that he received a copy of his indictment, a bill of particulars in his case, and a discovery response from the State prior to entering his pleas but that he never received any lab reports indicating what the substances at issue were before entering his pleas. He also testified that his understanding of the charges were that he was being accused of having sold ecstasy on two occasions and crack cocaine on one occasion. Williamson further testified that he was not allowed to take anything with him when he was transferred from the local jail to prison and that a friend of his who was in jail with him took his discovery materials that he had in his jail property to the friend's attorney to review. Williamson's wife was then contacted by that attorney and asked to obtain copies of a number of items from the Marion County Clerk of Courts. The attorney then contacted Williamson and informed him that although he pled guilty to Count One based upon selling and offering to sell ecstasy, the lab results showed that the substance sold was actually methamphetamine.

{¶11} Williamson testified on direct examination that he would not have entered pleas of guilty if he would have known the substance involved in Count One was methamphetamine rather than ecstasy. Williamson also testified that his

attorney at the time of the plea was attempting to strike a deal that would get Williamson less prison time and that Count One would have been a lesser charge if he would have been charged with selling methamphetamine versus ecstasy. Thus, he explained during cross-examination that he believed that his attorney could have negotiated a lesser sentence for him if he would have had a lesser charge with which to bargain.

{¶12} The trial court took the matter under advisement, and on January 19, 2010, the trial court overruled Williamson's motion. This appeal followed, and Williamson now asserts one assignment of error.

**THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY DENYING HIS MOTION TO WITHDRAW HIS GUILTY PLEA.**

{¶13} Our review of this assignment of error begins by noting that an appellate court will not disturb a trial court's denial of a motion to withdraw a guilty plea absent an abuse of discretion. *State v. Nathan* (1995), 99 Ohio App.3d 722, 725, 651 N.E.2d 1044, citing *State v. Smith* (1977), 49 Ohio St.2d 261, 361 N.E.2d 1324. Abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. Indeed, "'the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the

exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias.'" *State v. Orwick*, 153 Ohio App.3d 65, 2003-Ohio-2682, 790 N.E.2d 1238, quoting *State v. Jenkins* (1984), 15 Ohio St.3d 164, 222, 473 N.E.2d 264. Thus, a reviewing court may not simply substitute its judgment for that of the trial court but must afford deference to the trial court's decision. *Blakemore*, 5 Ohio St.3d at 219, 450 N.E.2d 1140.

**{¶14}** Criminal Rule 32.1 states: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." A motion to withdraw a plea filed after a defendant is sentenced will be granted only to correct a manifest injustice with the burden of establishing the existence of a manifest injustice being placed upon the individual seeking vacation of the plea. Crim.R. 32.1; *Smith*, 49 Ohio St.2d at 264, 361 N.E.2d 1324. A manifest injustice is an exceptional defect in the plea proceedings, *State v. Vogelsong*, 3rd Dist. No. 5-06-60, 2007-Ohio-4935, ¶ 12, or a " 'clear or openly unjust act,'" *State v. Walling*, 3rd Dist. No. 17-04-12, 2005-Ohio-428, ¶ 6, quoting *State ex rel. Schneider v. Kreiner*, 83 Ohio St.3d 203, 208, 699 N.E.2d 83, 1998-Ohio-271. "Accordingly, a post-sentence motion to withdraw a guilty plea is only granted in 'extraordinary cases.'" *State v.*

*Driskill*, 3rd Dist. Nos. 10-08-10, 10-08-11, 2009-Ohio-2100, ¶ 32, quoting *Smith*, supra.

{¶15} Here, Williamson contends that the trial court abused its discretion in overruling his motion to withdraw his guilty pleas because his pleas involved a mistake of fact, prosecutorial misconduct, and ineffective assistance of counsel. Each of these claims is based upon the fact that the lab report indicated the substance at issue in Count One was methamphetamine rather than ecstasy. As noted, Williamson, the prosecutor who handled Williamson's plea, and Williamson's counsel during the plea each acknowledged that the lab report at issue appeared to have been overlooked by all. Further, the transcript of the plea hearing, including the prosecutor's recitation of what the State intended to prove if the case proceeded to trial, indicates that everyone involved was operating under the assumption that the drug at issue in the first count was ecstasy rather than methamphetamine. Thus, there is no dispute that there was a mistake of fact as to the first count. Nevertheless, the burden was on Williamson to demonstrate that his pleas on all three counts resulted in a manifest injustice.

{¶16} Ineffective assistance of counsel is a proper basis for seeking a post-sentence withdrawal of a guilty plea. *State v. Mays*, 174 Ohio App.3d 681, 2008-Ohio-128, 884 N.E.2d 607, ¶ 8. When an alleged error underlying a motion to withdraw a guilty plea is the ineffective assistance of counsel, the defendant must

show (1) that his counsel's performance was deficient and (2) that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty. *State v. Xie* (1992), 62 Ohio St.3d 521, 524, 584 N.E.2d 715, citing *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052. In addition, when alleging prosecutorial misconduct, a defendant must show that the prosecution's conduct was improper and, if so, whether the conduct prejudicially affected the defendant's substantial rights. *State v. Lott* (1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293. Necessary to both of these contentions is a showing of prejudice to the defendant.

{¶17} In presenting his motion to the trial court, Williamson asserted that he should have been charged in the first count with a felony of the fourth or fifth degree rather than a second degree felony based upon the fact that the drug he sold was methamphetamine not ecstasy. The trial court found this assertion to be inaccurate.

{¶18} Williamson was charged in Count One with aggravated trafficking in drugs. Aggravated trafficking in drugs is committed when a person knowingly sells *or* offers to sell any compound, mixture, preparation, or substance listed as a schedule I *or* schedule II controlled substance. R.C. 2925.03(A)(1), (C)(1). Ecstasy is a Schedule I controlled substance (hallucinogen). See R.C. 3719.41, Schedule I (C). Thus, a person can violate R.C. 2925.03(A)(1), (C)(1) by merely offering to sell ecstasy. See *State v. Chandler*, 109 Ohio St.3d 223, 2006-Ohio-

2285, 846 N.E.2d 1234, ¶ 9. Generally, a violation of R.C. 2925.03(A)(1), (C)(1) is a felony of the fourth degree. R.C. 2925.03(C)(1)(a). However, the type of substance, its form, its weight, and whether the offense occurred in the vicinity of a school or a juvenile can elevate the offense to a higher degree of felony and can also affect the type of sentence an offender receives. See R.C. 2925.03(C)(1)(b-f).

{¶19} In this case, Williamson does not dispute that he *offered* to sell 100 doses of ecstasy. In fact, it was the offer he made from Toledo, Ohio, over the telephone to sell ecstasy to an informant, who was on a phone in Marion, Ohio, that led Marion County to pursue its prosecution of Williamson, even though the actual sale occurred in Toledo. Given these undisputed facts, Williamson committed the offense of aggravated trafficking in drugs as charged in Count One once he offered to sell ecstasy to the informant. This is true regardless of what the substance he sold turned out to be or even if no drugs were ever recovered. See *Chandler*, supra; *Garr v. Warden, Madison Corr. Inst.*, __ Ohio St.3d __, 2010-Ohio-2449, __ N.E.2d __, ¶ 28.

{¶20} The question remains as to the appropriate level of offense and the consequent penalty range for this offense. Williamson maintains that he would have been guilty of merely a fourth or fifth degree felony if properly charged with selling methamphetamine rather than a second degree felony as actually charged in Count One based upon the allegation that he sold equal to or more than five

times the bulk amount of a schedule I or schedule II controlled substance.[1] Neither party disputes that the 100 unit doses of ecstasy Williamson admits he offered to sell is more than five times the bulk amount of ecstasy, which constitutes a second degree felony.[2] However, because the drugs were recovered, tested, and found to be methamphetamine, the penalty enhancement for ecstasy does not apply and the level of felony must be determined by the true identity, form, and weight of the substance. See *Chandler*, supra. As a result, Williamson asserts that he should be allowed to withdraw his plea because the amount and form of the methamphetamines that he sold constitutes a lesser degree of felony. We disagree, as did the trial court.

{¶21} Methamphetamines are a schedule II controlled substance (stimulant). R.C. 3719.41, Schedule II (C). The bulk amount for methamphetamine depends upon its form. If it is in a final dosage form manufactured by a person authorized to do so by federal law, its bulk amount is an amount equal to or in excess of 120 grams "or thirty times the maximum daily dose in the usual dose range specified in a standard pharmaceutical reference manual[.]" R.C. 2925.01(D)(1)(f). If it is not in a final dosage form manufactured

---

[1] In his written motion to the trial court, Williamson asserted that he would have been guilty of a fifth degree felony. However, the statutes referenced above have a minimum fourth degree felony classification. In short, there is no felony of the fifth degree for the sale or offer to sell of schedule I or schedule II drugs. See R.C. 2925.03(C)(1)(a-f). In any event, at the hearing, Williamson's attorney asserted that the offense Williamson committed was a fourth degree felony.
[2] Revised Code section 2925.01(D)(1)(c) defines the bulk amount of ecstasy, a schedule I hallucinogen, as, inter alia, equal to or in excess of ten unit doses.

by a person authorized to do so by federal law, i.e. street form, the bulk amount is equal to or in excess of three grams. R.C. 2925.01(D)(1)(g).

{¶22} In this case, the methamphetamines weighed 31.9 grams. Therefore, if the methamphetamines sold by Williamson were in their final dosage form and legally manufactured, then the amount he sold would constitute a felony of the fourth degree. See R.C. 2925.03(C)(1)(a). However, if the methamphetamines sold by Williamson were in street form, then the amount he sold would be more than five times the bulk amount, i.e. fifteen grams, which would constitute a felony of the second degree. See R.C. 2925.03(C)(1)(d). Accordingly, if charged for the substance he actually sold and that substance was in a final dosage form that was legally manufactured, Williamson could have been subjected to a maximum prison term of only eighteen months rather than a potential maximum prison term of eight years. See R.C. 2929.14(A)(2), (4).

{¶23} The only evidence before the trial court that described the methamphetamine was the lab report. This report described the substance as thirty-four light green tablets, forty-eight dark green tablets, and eighteen light purple tablets. Nothing in this report indicates that the tablets had markings to identify a federally authorized manufacturer or that the tablets were in a final dosage form. Further, the generic description of these tablets does not readily indicate that they were in final dosage form manufactured by a federally

authorized manufacturer. Thus, Williamson failed to establish that his level of offense would have been less than the level of offense for which he was charged. In fact, the trial court found that the evidence presented was more indicative that these tablets were a street form of methamphetamine, which would constitute a felony of the second degree, thereby rendering any misidentification of the substance harmless as both Count One and a "corrected" Count One would be second degree felonies. In light of the evidence, we cannot find that the trial court abused its discretion in reaching this conclusion.

{¶24} Moreover, the crux of the plea agreement was in the sentencing recommendation of the prosecutor not in the felony level of the charges. Specifically, none of the charges against Williamson was reduced to a lesser degree of offense. Instead, the prosecution agreed to seek no more than six years of imprisonment on the three counts *as charged* with the understanding that Williamson would request a pre-sentence investigation and would be requesting a lesser sentence than that recommended by the prosecution. At sentencing, although the trial court was well within its discretion to sentence Williamson to a lengthier term of imprisonment, i.e. twenty-eight years, the trial court elected to honor the spirit of the plea agreement between the State and Williamson and sentenced Williamson to the recommended six years. Notably, the trial court could have potentially sentenced Williamson to an aggregate sentence of twenty

years on Counts Two and Three alone, neither of which counts Williamson has challenged as factually inaccurate. Further, even assuming arguendo that Williamson had been indicted for a fourth degree felony in Count One as he contends would have been proper, his possible aggregate sentence could still have been much longer than six years as there would have been the potential for a sentence of twenty-one years and six months in prison.

**{¶25}** Lastly, Williamson stated that his concern for the level of offense was that his attorney could have used the lesser offense to negotiate a lesser sentence. Yet, both the prosecutor who entered into the plea agreement and Williamson's attorney at the time he entered his plea testified that the degree of the offense in Count One did not particularly matter in light of the totality of Williamson's charges, the strength of the State's case, and the possible collective penalty to which he was subjected. Rather, the six-year-sentence could have been reached in a variety of ways given the number of charges and the fact that two of the charges were first degree felonies. In fact, this would still be the case even if Count One had been established to be only a fourth degree felony as Williamson now argues. Thus, Williamson's assertion that his attorney could have negotiated a lesser sentence if Count One was a lesser charge is wholly speculative. In light of the potential sentences facing Williamson both as charged and as he contends

he should have been charged, Williamson has failed to demonstrate any prejudice he suffered as a result of his pleas.

{¶26} In short, Williamson had the burden to establish the existence of a manifest injustice in order for the trial court to grant his motion to withdraw his pleas. The trial court found that he failed to do so. In so doing, the trial court also relied on a number of factors provided in *State v. Fish* (1995), 104 Ohio App.3d 236, 661 N.E.2d 788, paragraph two of the syllabus. These factors include the potential prejudice to the State such as by the loss or destruction of the evidence as a result of the delay in filing the motion to withdraw the plea, the representation afforded to the defendant by counsel, the extent of the hearing conducted pursuant to Crim.R. 11, the extent of the hearing on the motion to withdraw, the amount of consideration given to the motion by the court, the timing of the motion, the reasons given for withdrawal, the defendant's understanding of the charges and penalties, and the existence of a meritorious defense.

{¶27} Even though these are factors that are to be considered in a *pre-sentence* motion to withdraw, see *Fish*, supra, the trial court specifically found in this case that the State had destroyed the drugs and would not be able to present the drugs if required to go to trial. The court also found that Williamson's trial counsel was experienced and competent, the Crim.R. 11 hearing was exhaustive

and in-depth, and that Williamson was given ample opportunity to present his position at a full hearing on his motion to withdraw.

{¶28} In sum, the trial court fully considered the motion to withdraw and the materials submitted to it by Williamson and found that the motion was filed more than a year after Williamson pled guilty, that Williamson's reasons for withdrawal were not well founded, that he understood the charges and penalties against him, and that his only defense to the charges was that the degree of offense should be less, which was not supported by the evidence. A review of the record reveals that each of these findings was supported by the record.

{¶29} Given the evidence before the court, we do not find that the trial court's decision is so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias, or exhibits any other characteristics which would constitute an abuse of discretion. Therefore, the assignment of error is overruled, and the judgment of the Common Pleas Court of Marion County, Ohio, is affirmed.

*Judgment Affirmed*

**ROGERS and PRESTON, J.J., concur.**

**/jlr**