[Cite as *State v. Shoulders*, 2014-Ohio-435.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,            CASE NO. 5-13-12

      v.

EMANUEL L. SHOULDERS,          O P I N I O N

      DEFENDANT-APPELLANT.

STATE OF OHIO,

      PLAINTIFF-APPELLEE,             CASE NO. 5-13-20

      v.

EMANUEL L. SHOULDERS,          O P I N I O N

      DEFENDANT-APPELLANT.

Appeals from Hancock County Common Pleas Court
Trial Court No. 2013 CR 11

**Judgments Affirmed**

Date of Decision: February 10, 2014

APPEARANCES:

     *Scott B. Johnson* for Appellant

     *Elizabeth H. Smith* for Appellee

**PRESTON, J.**

{¶1} Defendant-appellant, Emanuel L. Shoulders ("Shoulders"), appeals the Hancock County Court of Common Pleas' judgment entry of conviction and sentence and judgment entry denying his motion to withdraw his guilty plea. For the reasons that follow, we affirm.

{¶2} On January 8, 2013, the Hancock County Grand Jury indicted Shoulders on one count of aggravated robbery in violation of R.C. 2911.01(A)(1), a first-degree felony. (Doc. No. 1).

{¶3} The trial court held an arraignment hearing on January 16, 2013. (Jan. 16, 2013 Tr. at 3); (Doc. No. 9). Miller appeared with counsel from the Hancock County Public Defender's Office and entered a plea of not guilty. (*Id.*); (*Id.*).

{¶4} On January 17, 2013, the trial court overruled various motions filed by Shoulders, pro se, requesting that his case be sent back to the Findlay Municipal Court and that the trial court "stop this sham legal process." (Doc. No. 13). In its entry, the trial court ordered that any future filings be made through Shoulders' counsel. (*Id.*).

{¶5} At a pretrial conference on January 31, 2013, the trial court relieved counsel from the Hancock County Public Defender's Office from representation of Shoulders. (Jan. 31, 2013 Tr. at 7); (Doc. No. 24). On February 4, 2013, the trial court appointed Shoulders new counsel, notwithstanding Shoulders' statement at

the January 31, 2013 pretrial conference that he would like to represent himself. (Doc. No. 20); (Jan. 31, 2013 Tr. at 9).

{¶6} At a pretrial conference on February 14, 2013, the trial court scheduled a jury trial for March 26, 2013. (Feb. 14, 2013 Tr. at 7); (Doc. No. 29).

{¶7} On March 20, 2013, Shoulders and plaintiff-appellee, State of Ohio, entered into a plea agreement under which Shoulders agreed to plead guilty, to proceed straight to sentencing, and to jointly recommend with the State a sentence of five years in prison. (Doc. No. 42); (Mar. 20, 2013 Tr. at 4-8). The trial court held a change-of-plea hearing on March 20, 2013. (Mar. 20, 2013 Tr. at 3). At the hearing, Shoulders signed the plea agreement and requested that he be allowed to withdraw his guilty plea and plead guilty. (Mar. 20, 2013 Tr. at 41-42); (Doc. No. 45). The trial court found Shoulders guilty and proceeded to sentence him to the jointly recommended sentence of five years imprisonment. (*Id.* at 42, 45); (*Id.*).

{¶8} Two days after the change-of-plea hearing, the trial court filed its judgment entry of conviction and sentence. (Doc. No. 45).

{¶9} On March 28, 2013, Shoulders, acting pro se even though he was represented by counsel, filed two motions. One was a "motion to withdraw guilty plea," in which Shoulders argued that he should be allowed to withdraw his guilty plea because he was under the influence of medications that affected his judgment

-3-

at the March 20, 2013 change-of-plea hearing. (Doc. No. 49). His second motion was a "motion to hold or stay excution [sic] of sentence pending investigation of the withdrawl [sic] of guilty plea by the defendant." (Doc. No. 50). Underneath his signature on both of his motions filed on March 28, 2013, Shoulders wrote "3-20-13." (Doc. Nos. 49, 50). Also on March 28, 2013, Shoulders filed a letter from him to the trial court judge dated "3-26-13." (Doc. No. 51).

{¶10} On April 4, 2013, Shoulders, this time through counsel, filed a second "motion to withdraw guilty plea," arguing that he "was so medicated that his plea was not knowingly, and intelligently offered."[1] (Doc. No. 53).

{¶11} On April 19, 2013, Shoulders filed a notice of appeal of the trial court's March 22, 2013 judgment entry of conviction and sentence. (Doc. No. 60). That appeal was assigned appellate case number 5-13-12; however, we stayed that appeal and granted Shoulders' motion to remand the matter to the trial court for the trial court's ruling on Shoulders' pending motion to withdraw his guilty plea. (*See* Doc. No. 95). Also on April 19, 2013, Shoulders requested that the trial court appoint him appellate counsel. (Doc. No. 63).

{¶12} On April 25, 2013, the trial court appointed Shoulders new counsel for purposes of appeal and his motion to withdraw his guilty plea. (Doc. No. 87).

---

[1] Although Shoulders filed two motions to withdraw his guilty plea—one pro se and one through counsel—we will refer to them collectively as a single motion to withdraw his guilty plea, as the parties do in their briefs, unless otherwise noted.

{¶13} On June 7, 2013, the State filed its memorandum in opposition to Shoulders' motion to withdraw his guilty plea. (Doc. No. 92).

{¶14} On June 13, 2013, the trial court held a hearing on Shoulders' motion to withdraw his guilty plea. (June 13, 2013 Tr. at 4); (Doc. No. 95).

{¶15} On August 9, 2013, the trial court issued its judgment entry denying Shoulders' motion to withdraw his guilty plea. (Doc. No. 95).

{¶16} On August 23, 2013, Shoulders filed his notice of appeal of the trial court's August 9, 2013 judgment entry. (Doc. No. 96). That appeal was assigned appellate case number 5-13-20, and we consolidated it with appellate case number 5-13-12.

{¶17} On August 29, 2013, Shoulders' counsel—whom the trial court appointed on April 25, 2013—moved to withdraw as counsel. (Doc. No. 103). The trial court granted that motion on September 6, 2013 and appointed Shoulders new appellate counsel on September 13, 2013. (Doc. Nos. 104, 105).

{¶18} Shoulders raises two assignments of error for our review. To facilitate our analysis, we review both assignments of error together.

**Assignment of Error No. I**

**The trial court erred in denying defendant's motion to withdraw his guilty plea in that his plea was not voluntary or knowingly [sic] because he was on medication and was not in his right mind.**

**Assignment of Error No. II**

**The counsel for the defendant provided ineffective assistance of counsel.**

{¶19} In his first assignment of error, Shoulders argues that the trial court erred when it denied his motion to withdraw his guilty plea. Specifically, he argues that the trial court should have treated his motion as a presentence motion rather than a postsentence motion because his pro se motion was dated March 20, 2013, and the trial court did not file its judgment entry of conviction and sentence until March 22, 2013. Shoulders also argues that, even treating his motion as postsentence, it was a manifest injustice for the trial court to not allow him to withdraw his guilty plea because he "was medicated and not in his right mind" at the change-of-plea hearing, he was misled and pressured by his attorney and received ineffective assistance of counsel, he drafted his pro se motion to withdraw his guilty plea the same day as the change-of-plea hearing, and he asserted at the hearing on his motion to withdraw his guilty plea that he was not guilty.

{¶20} In his second assignment of error, Shoulders argues that he was denied effective assistance of counsel relating to his change of plea. Specifically, he argues that his counsel misled him into believing that he had no defenses and pressured him into changing his plea, even though Shoulders was under the influence of medication. Shoulders also argues in his second assignment of error

that his counsel was ineffective at the hearing on his motion to withdraw his guilty plea. Specifically, he argues that his counsel was unprepared, failed to offer expert testimony concerning the physiological and psychological effects of the medication Shoulders was taking at the time of the change-of-plea hearing, and failed to elicit testimony from Shoulders concerning his alleged innocence.

{¶21} Crim.R. 32.1 provides: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Although a defendant does not maintain an absolute right to withdraw his or her plea prior to sentencing, the general rule is that a trial court should freely grant a presentence motion to withdraw a guilty plea. *State v. Xie*, 62 Ohio St.3d 521, 526 (1992). However, a defendant seeking to withdraw a guilty plea after sentence has the burden of demonstrating a "manifest injustice." *State v. Smith*, 49 Ohio St.2d 261 (1977), paragraph one of the syllabus. Accordingly, before reviewing the trial court's decision, we must determine whether Shoulders' motion was a presentence motion or a postsentence motion.

{¶22} The trial court sentenced Shoulders at the March 20, 2013 hearing, and it filed its judgment entry of conviction and sentence, dated March 20, 2013, on March 22, 2013. (Mar. 20, 2013 Tr. at 45); (Doc. No. 45). Shoulders filed his

pro se motion to withdraw his guilty plea, dated March 20, 2013, on March 28, 2013. (Doc. No. 49). Shoulders argues that the judgment entry of conviction and sentence was not effective until it was filed on March 22, 2013, which was after March 20, 2013—the date Shoulders wrote on his motion to withdraw his guilty plea. However, even assuming the trial court's judgment entry of conviction and sentence was not effective until March 22, 2013, Shoulders' motion was filed six days after it and, therefore, was a postsentence motion to withdraw his guilty plea. *See* Crim.R. 12(B) ("The filing of documents with the court, as required by these rules, shall be made by filing them with the clerk of court * * *.").

{¶23} As we stated above, a defendant seeking to withdraw a guilty plea after sentence has been imposed must demonstrate a "manifest injustice." *Smith*, 49 Ohio St.2d 261, paragraph one of the syllabus. This Court has previously defined a "manifest injustice" as a "clear or openly unjust act." *State v. Walling*, 3d Dist. Shelby No. 17-04-12, 2005-Ohio-428, ¶ 6. Notably, a postsentence withdrawal of a guilty plea is available only in "extraordinary cases." *Smith*, 49 Ohio St.2d at 264. As Shoulders acknowledges, the manifest-injustice standard is "a relatively high hurdle to clear." (Appellant's Brief at 16).

{¶24} A trial court maintains discretion in determining whether a defendant established a "manifest injustice." *Smith*, 49 Ohio St.2d 261, paragraph two of the syllabus. As such, this Court will not reverse a trial court's decision absent an

abuse of discretion. *State v. Nathan*, 99 Ohio App.3d 722, 725 (3d Dist.1995). An abuse of discretion is more than a mere error in judgment; it suggests that a decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157-158 (1980).

{¶25} We first address Shoulders' argument that he did not make his plea knowingly, voluntarily, or intelligently because he was under the influence of medications at the time he entered his plea. "Before accepting a guilty plea, Crim.R. 11 requires the trial court to personally address a defendant to determine if the plea is voluntary, and that the defendant understands both the plea itself as well as the rights waived by pleading guilty." *State v. Spencer*, 3d Dist. Hardin Nos. 6-12-15 and 6-12-16, 2013-Ohio-137, ¶ 13, citing Crim.R. 11(C)(2).

{¶26} In this case, the trial court conducted a thorough colloquy with Shoulders at the change-of-plea hearing, which demonstrated that Shoulders was lucid at the time he entered his guilty plea and that he entered it knowingly, intelligently, and voluntarily, notwithstanding his being on medications:

> [Trial Court]: Okay. You ever been treated for any mental illness? To your knowledge do you now suffer from any mental or emotional disability that would effect [sic] your understanding of these proceedings right here, right now in the courtroom?

[Shoulders]:     Yes, I do suffer from mental illness and disabilities. Yes, I do suffer from some situations.  At this time, Your Honor, I am under some medications that are suppose [sic] to help me.  Due to the nature of this crime, and to the seriousness of the situation here, Your Honor, I am moving forward with this matter.

[Trial Court]:    You're what?

[Shoulders]:     I am moving forward with this matter, Your Honor.

[Trial Counsel]: What do you mean by moving forward?

[Shoulders]:     I'm ready to proceed.

[Trial Counsel]: Ready to proceed with the plea, okay.

[Trial Court]:    So the medications, the emotional, whatever, are not effecting [sic] your ability to understand what we're doing today and to make decisions about what we're doing today, is that correct?

[Shoulders]:     No, Your Honor.  It's not effecting [sic] my decision making.  Though I must concur that I am a little at ease about some things because I haven't really had a chance to talk with my family.  That was a concern I did tell my lawyer.  So I'm a little

nervous about this situation I'm doing right now. But I'm being told that this is to my best interest to enter this plea today.

I wish, however, that I could have a little time to talk to my family, but I'm told if I don't that my plea agreement may be tooken [sic] away. And I don't want to waste the Court time, nor mines [sic], so I'm proceeding, Your Honor.

[Trial Court]: Okay. You understand we have a trial date of next Tuesday if you want to take advantage of that? We've got a jury summoned, they're coming in.

[Shoulders]: I don't want to go to a jury trial, Your Honor. I understand that. I want to do what I have to do to get this plea that has been offered to me today.

[Trial Court]: Okay. And I want to do what I have to do, which is make the record here.

[Shoulders]: Yes, sir.

[Trial Court]: Which is what I'm trying to do, okay.

[Shoulders]: Yes, sir.

[Trial Court]: Now the emotional difficulties, the mental health issues are not of such a nature that they're effecting [sic] your understanding of what we're doing, is that correct?

[Shoulders]: That's right.

[Trial Court]: Okay. Now, have you had sufficient time to think about and discuss with your attorney * * * the agreement previously referred to and the plea that you're about to enter?

[Shoulders]: Yes, sir.

[Trial Court]: Are you currently under the influence of any intoxicants, any drugs or medication that would effect [sic] your understanding?

[Shoulders]: I am under the influence of medication. Other than my psych meds, that's it. But no drugs, Your Honor.

[Trial Court]: Is the medication that you're taking effecting [sic] your ability to make decisions?

[Shoulders]: No, Your Honor.

[Trial Court]: Okay. Do you understand that a plea of guilty is a complete admission of your guilt? In other words, you're telling me, Judge, I did exactly what I'm charged with here in this one count indictment. Do you understand?

[Shoulders]: Yes, Your Honor.

* * *

[Trial Court]: It's my understanding you're pleading guilty to the charge, is that correct, Mr. Shoulders?

[Shoulders]: Yes, sir, Your Honor.

[Trial Court]: We are immediately proceeding with sentencing, is that your understanding?

[Shoulders]: Yes, Your Honor.

(Mar. 20, 2013 Tr. at 16-19, 21).

{¶27} The trial court thoroughly explained to Shoulders the rights he was waiving by pleading guilty, including his rights to a jury or bench trial, to publicly testify about the facts of the case, to confrontation, to compulsory process, to require the State to prove the indicted count beyond a reasonable doubt, and against compulsory self-incrimination. (*Id.* at 25-28). Shoulders indicated that he understood he was waiving these rights by pleading guilty. (*Id.*).

-13-

{¶28} At the June 13, 2013 hearing on Shoulders' motion to withdraw his guilty plea, he testified that the medications he had taken before the change-of-plea hearing—Vistaril, Celexa, and a blood pressure pill—make him "drowsy and sleepy and tired at times." (June 13, 2013 Tr. at 21). He said the medications were given to him to "slow [him] down from acting out" and "[f]rom basically losing control of [his] mind all the time." (*Id.* at 22). Shoulders also testified that at the change-of-plea hearing, he "kind of went into a shell shock situation where [he] was just going with the flow." (*Id.* at 30). He testified that he was "just answering" questions at the change-of-plea hearing. (*Id.*).

{¶29} The record belies Shoulders' arguments. At the June 13, 2013 hearing, he testified that he "recall[ed] *very clearly* that [he] made it aware to the Court that [he] had just tooken [sic] medications." (Emphasis added.) (*Id.*). In other words, Shoulders' clarity of mind at the change-of-plea hearing was such that he was able to "very clearly" recall twelve weeks later that he informed the trial court that he had just taken his medications.

{¶30} Nor was Shoulders simply "going with the flow" or "answering questions" at the change-of-plea hearing. Rather, Shoulders was engaged in the colloquy. For example, when the trial court asked Shoulders whether he had any questions concerning the written plea form, he articulated a concern regarding judicial release:

I was a little concerned about the plea agreement about not being able to file any judicial releases. I was [sic] wanted to add, if possible, could I have that stipulation took out of my plea agreement. That's one thing that kind of shook me that I kind of wasn't too sure of. Though I don't know my chances of getting it granted, however that case may be, but I do not want to give up that right.

(Mar. 20, 2013 Tr. at 12-13). At that point—and at no fewer than five other points during the change-of-plea hearing—the trial court allowed Shoulders to confer with his counsel. (*Id.* at 13, 14, 31, 35, 40, 41).

{¶31} As excerpted above, Shoulders engaged in a thorough discussion with the trial court concerning his medications. (*Id.* at 16-19). He informed the trial court that he was "on probation with the Federal Government at this time." (*Id.* at 15). When asked by the trial court whether he had any questions about what they discussed in the colloquy, Shoulders was able to articulate a question concerning court costs. (*Id.* at 29-30). In fact, he stated to the trial court, "I'm requesting at this time that my record be checked. It will show that I'm indigent. And I want that on record that I'm an indigent Defendant." (*Id.* at 30).

{¶32} Shoulders said he regretted his involvement in the crime for which he was charged. (*Id.* at 39). When invited by the trial court to make a statement before sentencing, Shoulders had the wherewithal to describe as "a terrible

situation" the events leading to the aggravated robbery count, to express remorse and say he wished he "had the knowledge to deal with that day better," to ask for forgiveness, and to say he has tried to learn from his mistakes, including the one at issue in this case. (*Id.* at 44-45).

**{¶33}** Based on our review of the transcripts of the change-of-plea hearing and the June 13, 2013 hearing, we reject Shoulders' argument that his being under the influence of medications at the time he changed his plea to guilty created a manifest injustice. *See State v. Taylor*, 11th Dist. Lake No. 2002-L-005, 2003-Ohio-6670, ¶ 46 (affirming the trial court's denial of the defendant's motion to withdraw his guilty pleas, notwithstanding his argument that he was under the influence of several medications at the time he entered his pleas, because the record reflected that the defendant "was lucid at the time he entered his pleas").

**{¶34}** We next turn to Shoulders' argument that a manifest injustice was created because he was misled and pressured by, and received ineffective assistance of counsel from his attorney at the change-of-plea hearing. "Under Ohio law, '[i]neffective assistance of counsel can constitute manifest injustice sufficient to allow the post-sentence withdrawal of a guilty plea.'" *State v. Miranda*, 10th Dist. Franklin No. 13AP-271, 2013-Ohio-5109, ¶ 12, quoting *State v. Dalton*, 153 Ohio App.3d 286, 2003-Ohio-3813, ¶ 18 (10th Dist.). *See also State v. Williamson*, 3d Dist. Marion No. 9-10-11, 2010-Ohio-5060, ¶ 16.

**{¶35}** "When an alleged error underlying a motion to withdraw a guilty plea is the ineffective assistance of counsel, the defendant must show (1) that his counsel's performance was deficient and (2) that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty." *Williamson* at ¶ 16, citing *Xie*, 62 Ohio St.3d at 524 and *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). "When a defendant pleads guilty, a claim of ineffective assistance of counsel may be grounds for vacating his plea only to the extent that counsel's ineffectiveness makes the plea less than knowing and voluntary." *State v. Milbrandt*, 2d Dist. Champaign No. 2007-CA-3, 2008-Ohio-761, ¶ 9.

**{¶36}** In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 687. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989), quoting *State v. Lytle*, 48 Ohio St.2d 391, 396 (1976).

-17-

{¶37} We first address Shoulders' argument that his counsel was ineffective because he misled him by allegedly telling him that he had no defenses. The decision whether to raise a defense is a tactical or strategic decision. *See State v. Collins*, 6th Dist. Huron Nos. H-09-001 and H-09-005, 2009-Ohio-6346, ¶ 44 (concluding that counsel was not ineffective for not discussing the defense of entrapment with the defendant before he entered his guilty plea).

{¶38} At the June 13, 2013 hearing, Shoulders testified that his counsel did not discuss potential defenses with him. (June 13, 2013 Tr. at 35-37). That testimony contradicts his statements to the trial court at the change-of-plea hearing. At that time, Shoulders informed the trial court that he and his counsel discussed the indictment, the things the State would need to prove at trial to sustain a conviction against Shoulders, Shoulders' potential defenses, and what was going on in his life on January 4, 2013 in relation to the charge. (Mar. 20, 2013 Tr. at 20-21). Specifically regarding potential defenses, this exchange took place:

> [Trial Court]: Have the two of you talked about potential defenses to the charge?
>
> [Shoulders]: Yes, Your Honor.

(*Id.* at 21). In addition to Shoulders' conflicting testimony, he has not demonstrated that his counsel's treatment of potential defenses was deficient or

anything less than a trial strategy prompted by reasonable professional judgment. For those reasons, we reject Shoulders' arguments concerning potential defenses.

{¶39} Next, we address Shoulders' argument that his counsel was ineffective by allegedly pressuring him into accepting the plea agreement and changing his plea. "The decision to plead guilty in order to avoid a jury trial is a tactical strategy to which we afford counsel deference." *State v. Smith*, 3d Dist. Hancock No. 5-06-30, 2007-Ohio-1626, ¶ 14, citing *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, ¶ 85 and *Strickland*, 466 U.S. at 689.

{¶40} At the June 13, 2013 hearing, Shoulders testified that his counsel pressured him into accepting the plea agreement and pleading guilty. (June 13, 2013 Tr. at 28-32). However, at the change-of-plea hearing, Shoulders demonstrated an understanding that the decision to plead guilty was his alone:

[Trial Court]: Mr. Shoulders, I trust you understand that the decision to plead guilty today is one that you and you alone have to make. You can rely upon [your counsel] by virtue of his education, his training, his experience. Bottom line whether or not you plead guilty, what you plead guilty to is entirely up to you. Do you understand?

[Shoulders]: Yes, Your Honor.

(Mar. 20, 2013 Tr. at 34).

**{¶41}** Second, at the change-of-plea hearing, Shoulders informed the trial court that he was "very satisfied" with his counsel:

[Trial Court]: Mr. Shoulders, you satisfied with the services of [your counsel] as your attorney of record in this case?

[Shoulders]: Yes, Your Honor. I just have –

WHEREUPON, Defense counsel confers with the Defendant off the record.

[Trial Counsel]: Yes. He just had a question of what I'm going to address that court cost issue, Judge. I would just note, I think Mr. Shoulders, we met at least ten times, maybe fifteen times?

[Shoulders]: Yeah. I'm very satisfied with you.

* * *

[Trial Court]: So Mr. Shoulders, you're satisfied with [your counsel's] services, is that correct?

[Shoulders]: Yes, Your Honor.

(*Id.* at 40-41).

-20-

{¶42} Finally, the witness offered by Shoulders at the June 13, 2013 hearing—the social worker at the Hancock County Justice Center where Shoulders was incarcerated on the day of his change-of-plea hearing—testified that Shoulders told her later that day that "he felt that *he made* the wrong decision," that "he felt pressured," and that he "regret[ted] the choice that *he made*." (Emphasis added.) (June 13, 2013 Tr. at 14).

{¶43} Therefore, the record reflects that Shoulders knew the decision to plead guilty was his, and he has failed to demonstrate that his counsel's actions relative to the plea agreement were deficient. We conclude that Shoulders did not receive ineffective assistance of counsel relative to his change of plea, and we reject his argument that a manifest injustice occurred based on ineffective assistance of counsel.

{¶44} We next turn to Shoulders' arguments that a manifest injustice occurred because he began drafting his pro se motion to withdraw his guilty plea the same day as the change-of-plea hearing, and because he asserted at the hearing on his motion to withdraw his guilty plea that he was not guilty. The timing of a motion to withdraw a guilty plea and a defendant's potential innocence are but two of the factors appellate courts consider when reviewing a trial court's decision concerning a *pre*sentence motion to withdraw a guilty plea. *See State v. Lane*, 3d Dist. Van Wert No. 15-12-13, 2013-Ohio-1497, ¶ 19, citing *State v. Fish*, 104

Ohio App.3d 236, 240 (1st Dist.1995) and *State v. Lefler*, 3d Dist. Hardin No. 6-07-22, 2008-Ohio-3057, ¶ 11. Here, Shoulders' was a *post*sentence motion to withdraw his guilty plea, which, unlike presentence motions, is subject to the more stringent manifest-injustice standard. Moreover, even if we were to consider the factors applied to presentence motions, no one factor is dispositive. *See State v. Fairrow*, 4th Dist. Ross No. 05CA2856, 2006-Ohio-503, ¶ 18. We reject these arguments that Shoulders bases on the presentence-motion factors.

{¶45} We conclude that Shoulders failed to demonstrate a manifest injustice and, therefore, that the trial court did not abuse its discretion in denying his motion to withdraw his guilty plea.

{¶46} Finally, we turn to Shoulders' argument that he received ineffective assistance of counsel at the hearing on his motion to withdraw his guilty plea. We recited above the standard that applies to claims of ineffective assistance of counsel with respect to the withdrawal of a guilty plea. The general standard applicable to ineffective-assistance claims is essentially the same. A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland*, 466 U.S. at 687. For the reasons below,

Shoulders has failed to demonstrate that his counsel's performance was deficient or unreasonable under the circumstances.

{¶47} Shoulders argues that his counsel at the June 13, 2013 hearing was ineffective because he failed to offer expert testimony concerning the effects of Shoulders' medications. "[T]he decision whether to call a witness is 'within the rubric of trial strategy and will not be second-guessed by a reviewing court.'" *State v. Rust*, 3d Dist. Marion No. 9-12-49, 2013-Ohio-2151, ¶ 26, quoting *State v. Stiles*, 3d Dist. Allen No. 1-08-12, 2009-Ohio-89, ¶ 58.

{¶48} Shoulders testified at the June 13, 2013 hearing that he was on three medications—Vistaril, Celexa, and a blood pressure pill—that made him "drowsy and sleepy and tired at times." (June 13, 2013 Tr. at 21). The Hancock County Justice Center's social worker, who Shoulders' counsel called at that hearing, testified that while she did not have expertise concerning side effects of medications, in her experience, most of her clients on Celexa "have minimal side effects." (*Id.* at 13). Shoulders' counsel may very well have been satisfied with the testimony of Shoulders and the social worker concerning side effects, and he may have decided not to call an expert witness for any number of reasons—for example, so as not to risk contradicting his client's testimony. Therefore, Shoulders' counsel's decision fell within the rubric of trial strategy.

**{¶49}** Shoulders' also argues that his counsel at the June 13, 2013 hearing was ineffective because he failed to elicit testimony from Shoulders concerning Shoulders' alleged innocence. "The scope and nuances of how a particular witness is questioned fall within the ambit of trial strategy, and even debatable tactical decisions do not demonstrate ineffectiveness." *State v. Barnhart*, 6th Dist. Huron No. H-10-005, 2011-Ohio-2693, ¶ 44, citing *State v. Reeves*, 10th Dist. Franklin No. 05AP-158, 2005-Ohio-5838, ¶ 26.

**{¶50}** We first note that Shoulders overemphasizes the significance of his alleged innocence, which, as we stated above, is but one of the nine nondispositive factors an appellate court considers when reviewing a trial court's decision concerning a presentence, not postsentence, motion to withdraw a guilty plea. *See Lane*, 2013-Ohio-1497, at ¶ 19. Second, as a matter of trial strategy, Shoulders' counsel may have wished to avoid the issue of Shoulders' culpability to avoid contradicting Shoulders' statements to the trial court at the change-of-plea hearing, in which Shoulders admitted his involvement in the events leading to the aggravated robbery charge. (Mar. 20, 2013 Tr. at 35-39, 44-45). Once again, Shoulders' counsel's decision fell within the ambit of trial strategy.

**{¶51}** Finally, Shoulders argues that his counsel was unprepared for the June 13, 2013 hearing, as evidenced by his citing only one case during the hearing—*State v. Prince*, 3d Dist. Auglaize No. 2-12-07, 2012-Ohio-4111—which

Shoulders points out involved a presentence, not postsentence, motion to withdraw a guilty plea. Shoulders also points to his counsel mentioning in closing argument the number of days between sentencing and the April 4, 2013 motion to withdraw his guilty plea filed by counsel, rather than Shoulders' pro se motion filed on March 28, 2013. Neither of these demonstrates unpreparedness.

{¶52} First, in his brief, Shoulders relies on case law concerning presentence motions to withdraw guilty pleas, so his counsel's reliance on a presentence case at the hearing could not have been as unreasonable as he claims. Second, his counsel mentioning the April 4, 2013 motion to withdraw Shoulders' guilty plea, rather than the March 28, 2013 pro se motion, does not rise to the level of ineffective assistance. As we established above, using either filing date—March 28, 2013 or April 4, 2013—Shoulders' request to withdraw his guilty plea was postsentence, and the difference of seven days between the motions is not legally significant.

{¶53} In short, the record reflects that Shoulders' counsel was prepared for the June 13, 2013 hearing. He offered the testimony of two witnesses, including Shoulders, and a closing argument. (*See* June 13, 2013 Tr. at 6, 18, 47-48). Throughout the hearing, and particularly while questioning his witnesses, Shoulders' counsel demonstrated an understanding of the case and of Shoulders' bases for his motion to withdraw his guilty plea.

**{¶54}** For these reasons, Shoulders was not denied effective assistance of counsel at the June 13, 2013 hearing.

**{¶55}** Shoulders' first and second assignments of error are overruled.

**{¶56}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgments of the trial court.

*Judgments Affirmed*

**ROGERS and SHAW, J.J., concur.**

**/jlr**