[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Gonzales,* Slip Opinion No. 2016-Ohio-8319.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-8319

THE STATE OF OHIO, APPELLANT, *v.* GONZALES, APPELLEE.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Gonzales,* Slip Opinion No. 2016-Ohio-8319.]

*Criminal law—Cocaine-possession offenses—R.C. 2925.11(C)(4)(b) through (f)— State must prove that weight of cocaine without filler meets the statutory threshold—Judgment affirmed.*

(Nos. 2015-0384 and 2015-0385—Submitted February 9, 2016—Decided December 23, 2016)

APPEAL from and CERTIFIED by the Court of Appeals for Wood County, No. WD-13-086, 2015-Ohio-461.

_____

LANZINGER, J.

{¶ 1} In this case, we are asked to resolve a conflict between the appellate districts presented by the following certified question: "Must the state, in prosecuting cocaine offenses involving mixed substances under R.C. 2925.11(C)(4)[(b)] through (f), prove that the weight of the cocaine meets the

statutory threshold, excluding the weight of any filler materials used in the mixture?"[1]  We answer the certified-conflict question in the affirmative and affirm the judgment of the Sixth District Court of Appeals.

## I.     Case Background

{¶ 2} Drug enforcement agents arranged a reverse transaction, in which a confidential source sold two imitation bricks of cocaine to appellee, Rafael Gonzales.  One of the bricks contained a compartment holding a baggie of cocaine weighing 139.2 grams, of which three to 20 grams were the weight of the baggie itself.  The other brick contained a tracking device.  Because he was alleged to have possessed more than 100 grams of cocaine, Gonzales was indicted on one first-degree-felony count of cocaine possession under R.C. 2925.11(A) and 2925.11(C)(4)(f).  The allegation that Gonzales had possessed at least 100 grams of cocaine supported a major-drug-offender ("MDO") specification in the indictment.  R.C. 2941.1410(A).  R.C. 2929.01(W) includes in its definition of MDO "an offender" convicted of possessing "at least one hundred grams of cocaine."

{¶ 3} On the day of trial, Gonzales, through counsel, filed a motion in limine to preclude the state's expert and a lay witness from testifying that the substance tested was cocaine, because counsel had received the lab report from the state less than 48 hours before the trial.  The trial court excluded the lab report and expert witness, but permitted lay-witness testimony to identify the substance in the brick as cocaine if a proper foundation was established.

{¶ 4} At trial, the confidential source and several law enforcement officers testified that exhibit 13 was a baggie of cocaine.  Some witnesses acknowledged

---

[1] The certified-conflict question as posed by the Sixth District Court of Appeals references *R.C. 2925.11(C)(4)(a)* to R.C. 2925.11(C)(4)(f).  Subdivision (a), however, does not have a weight requirement so that possession of any amount of cocaine is a felony of the fifth degree.  We have modified the question to include only those provisions that have a weight requirement.

that cocaine is often mixed with other substances or filler material. No evidence was presented, however, regarding the purity of exhibit 13—that is, whether, or how much, this cocaine was mixed with filler. The defense asked the trial court to read the statutory definition of "cocaine" in R.C. 2925.01(X) to the jurors, and to instruct them that to convict Gonzales of first-degree felony possession, they must find that Gonzales possessed at least 100 grams of actual cocaine, rather than a cocaine mixture. The trial court denied both motions.

{¶ 5} The jury found Gonzales guilty of possession of cocaine and further found that the amount of cocaine involved equaled or exceeded 100 grams. Gonzales was immediately sentenced to a mandatory term of 11 years. *See* R.C. 2929.13(F)(5) and 2929.14(A)(1).

{¶ 6} Gonzales filed a notice of appeal to the Sixth District Court of Appeals. In reversing the judgment, the appellate court vacated the 11-year mandatory prison sentence that Gonzales received as an MDO pursuant to R.C. 2925.11(C)(4)(f) because the amount of cocaine was 100 grams or more. It remanded the case for resentencing. The appellate court held that in prosecuting cocaine offenses under R.C. 2925.11(C)(4)(a) [sic] through (f), the state is required to prove that the weight of the actual cocaine possessed by the offender met the statutory threshold. 2015-Ohio-461, ¶ 47. Although the state submitted evidence on the weight of the baggie's contents, it did not offer any evidence on whether that weight included ingredients other than cocaine. *Id.* at ¶ 46-47. As a result, the Sixth District held that the penalty enhancement under R.C. 2925.11(C)(4)(f) must be reversed and vacated. *Id.* at ¶ 47.

{¶ 7} The Sixth District, sua sponte, certified a conflict with the judgment of the Second District in *State v. Smith*, 2d Dist. Greene No. 2010-CA-36, 2011-Ohio-2568. We recognized the conflict, 143 Ohio St.3d 1402, 2015-Ohio-2747, 34 N.E.3d 131, and accepted the state's discretionary appeal, 143 Ohio St.3d 1403, 2015-Ohio-2747, 34 N.E.3d 132. The sole issue before this court is whether, in

prosecutions for possession of cocaine, the offense level is determined by the weight of only the actual cocaine or whether it is determined by the total weight of the cocaine plus any filler.

## II.     Legal Analysis

*Standard of Review*

{¶ 8} The interpretation of a statute is a matter of law, and thus we review the court of appeals' decision de novo, including consideration of the statute's ambiguity. *State v. Pariag*, 137 Ohio St.3d 81, 2013-Ohio-4010, 998 N.E.2d 401, ¶ 9. Our main objective is to determine and give effect to the legislative intent. *State ex rel. Solomon v. Police & Firemen's Disability & Pension Fund Bd. of Trustees*, 72 Ohio St.3d 62, 65, 647 N.E.2d 486 (1995). To accomplish this task, we first must look at the language of the statute itself. *Provident Bank v. Wood*, 36 Ohio St.2d 101, 105, 304 N.E.2d 378 (1973). If the language is clear and unambiguous, we must apply it as written. "[I]t is the duty of this court to give effect to the words used, not to delete words used or to insert words not used." *Columbus-Suburban Coach Lines, Inc. v. Pub. Util. Comm.*, 20 Ohio St.2d 125, 127, 254 N.E.2d 8 (1969).

{¶ 9} It is also a cardinal rule of statutory construction that a statute should not be interpreted to yield an absurd result. *State ex rel. Dispatch Printing Co. v. Wells*, 18 Ohio St.3d 382, 384, 481 N.E.2d 632 (1985); *Slater v. Cave*, 3 Ohio St. 80, 83 (1853) ("where the literal construction of a statute would lead to gross absurdity, or where, out of several acts touching the same subject matter, there arise collaterally any absurd consequences, manifestly contradictory to common reason, the obvious intention of the law must prevail over a literal interpretation * * *"). *See also* R.C. 1.47(C) ("In enacting a statute, it is presumed that * * * [a] just and reasonable result is intended"). Principles of statutory construction require that courts interpret statutes to reflect a consistent legislative intent.

**{¶ 10}** We have, however, emphasized that " 'where there is ambiguity in a criminal statute, doubts are resolved in favor of the defendant.' " *State v. Young*, 62 Ohio St.2d 370, 374, 406 N.E.2d 499 (1980), quoting *United States v. Bass*, 404 U.S. 336, 348, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971). This canon of strict construction, also known as the rule of lenity, is codified in R.C. 2901.04(A), which provides that sections of the Revised Code that define offenses or penalties "shall be strictly construed against the state, and liberally construed in favor of the accused." Under the rule, ambiguity in a criminal statute is construed so as to apply the statute only to conduct that is clearly proscribed. *United States v. Lanier*, 520 U.S. 259, 266, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997).

*The Statute—R.C. 2925.11(C)(4)*

**{¶ 11}** Gonzales was convicted of possession of cocaine in violation of R.C. 2925.11, which provides:

> (A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog.
>
> * * *
>
> (C) Whoever violates division (A) of this section is guilty of one of the following:
>
> * * *
>
> (4) If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of possession of cocaine. The penalty for the offense shall be determined as follows:
>
> (a) Except as otherwise provided in division (C)(4)(b), (c), (d), (e), or (f) of this section, possession of cocaine is a felony of the fifth degree, and division (B) of section 2929.13 of the Revised

Code applies in determining whether to impose a prison term on the offender.

(b) If the amount of the drug involved equals or exceeds five grams but is less than ten grams of cocaine, possession of cocaine is a felony of the fourth degree, and division (B) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender.

(c) If the amount of the drug involved equals or exceeds ten grams but is less than twenty grams of cocaine, possession of cocaine is a felony of the third degree, and, except as otherwise provided in this division, there is a presumption for a prison term for the offense. If possession of cocaine is a felony of the third degree under this division and if the offender two or more times previously has been convicted of or pleaded guilty to a felony drug abuse offense, the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the third degree.

(d) If the amount of the drug involved equals or exceeds twenty grams but is less than twenty-seven grams of cocaine, possession of cocaine is a felony of the second degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the second degree.

(e) If the amount of the drug involved equals or exceeds twenty-seven grams but is less than one hundred grams of cocaine, possession of cocaine is a felony of the first degree, and the court shall impose as a mandatory prison term one of the prison terms prescribed for a felony of the first degree.

(f) If the *amount of the drug involved equals or exceeds one hundred grams of cocaine*, possession of cocaine is a felony of the

6

first degree, the offender is a major drug offender, and the court shall impose as a mandatory prison term the maximum prison term prescribed for a felony of the first degree.

(Emphasis added.) The possession of any amount of cocaine is at least a felony of the fifth degree.

{¶ 12} This version of R.C. 2925.11(C)(4)(f) was enacted as part of Am.Sub.H.B. No. 86 ("H.B. 86"), effective September 30, 2011. Previous versions of R.C. 2925.11 had set forth the degrees of the cocaine-possession offense using a range of the amount of the drug possessed and differentiated cocaine from crack cocaine. *See* 1998 Am.Sub.S.B. No. 66, 147 Ohio Laws, Part III, 6772, 6820-6821. For example, prior to H.B. 86, former R.C. 2925.11(C)(4)(f) read: "If the amount of the drug involved exceeds one thousand *grams of cocaine that is not crack cocaine * * **, possession of cocaine is a felony of the first degree * * *." (Emphasis added.) *Id.* at 6821. However, H.B. 86 amended several sections of the criminal code to decrease the offense classifications, thereby reducing the penalty or punishment for some offenses. The words "that is not crack cocaine" were removed from R.C. 2925.11, while "of cocaine" remained. As we previously noted, "one of the purposes of H.B. 86 was to 'eliminate the difference in criminal penalties for crack cocaine and powder cocaine.' Title, H.B. 86." *State v. Limoli*, 140 Ohio St.3d 188, 2014-Ohio-3072, 16 N.E.3d 641, ¶ 3.

{¶ 13} The state argues that the Sixth District Court of Appeals misinterpreted R.C. 2925.11(C)(4)(f) by requiring proof of the weight of the amount of actual cocaine in exhibit 13, to the exclusion of any filler material. It points out that R.C. 2925.11(C)(4) recognizes that the "drug involved" can be "cocaine or a compound, mixture, preparation, or substance containing cocaine." Because the drug involved can be a mixture, the state reasons that the weight requirements in R.C. 2925.11(C)(4)(b) through (f) do not refer to the weight of pure

cocaine only. The state contends that the appellate court improperly focused on the words "of cocaine" in R.C. 2925.11(C)(4)(f) to limit the drug involved to actual cocaine. The state would explain the inclusion of the phrase "of cocaine" as a holdover from the prior version of the statute, in which the legislature distinguished between powder cocaine and crack cocaine. It argues that the literal interpretation of the statute adopted by the Sixth District creates an absurd result and that the General Assembly did not intend to require a purity analysis of cocaine in prosecutions for possession of cocaine.

{¶ 14} The state and its amici note that Ohio's state labs perform aggregate/qualitative analyses but not purity/quantitative analyses of drugs. They contend that it will take a significant amount of time for state labs to become accredited to do the purity testing mandated by the Sixth District's decision and that this process will hamper efforts to prosecute cocaine trafficking and possession cases. The state believes that R.C. 2925.11(C)(4)(b) through (f) authorize the aggregate weight of the substance to determine the offense level and penalty as long as there is a detectible amount of cocaine.

*The Conflict Cases*

{¶ 15} In this case, the Sixth District agreed with the state that the plain language of R.C. 2925.11(C)(4) allows a jury to consider the total weight of the substance in the baggie containing cocaine. 2015-Ohio-461, ¶ 41. However, to be convicted of the MDO specification, the offender must possess an amount that equals or exceeds "at least one hundred grams *of cocaine*." (Emphasis added.) R.C. 2929.01(W) and 2925.11(C)(4)(f); *see also* R.C. 2925.01(X) (defining cocaine). The appellate court compared this language to the provisions for marihuana and heroin in R.C. 2925.11 and found that those subsections did not modify "drug involved" with "of marihuana" or "of heroin." *Id.* at ¶ 42. *See also* R.C. 2925.11(C)(3)((b) and (6)(b). It also noted that the definition of "cocaine" in R.C. 2925.01(X) and 3719.41 differs from that of many other drugs, in that most other

drugs are defined broadly to include a mixture of the drug within that particular drug's definition. 2015-Ohio-461, at ¶ 43. For example, "marihuana" is defined as "all parts of a plant of the genus cannabis, whether growing or not; the seeds of a plant of that type; the resin extracted from a part of a plant of that type; and every compound, manufacture, salt, derivative, mixture, or preparation of a plant of that type or of its seeds or resin." R.C. 2925.01(AA) and 3719.01(O). In contrast, R.C. 2925.01(X) provides:

> "Cocaine" means any of the following:
>
> (1) A cocaine salt, isomer, or derivative, a salt of a cocaine isomer or derivative, or the base form of cocaine;
>
> (2) Coca leaves or a salt, compound, derivative, or preparation of coca leaves, including ecgonine, a salt, isomer, or derivative of ecgonine, or a salt of an isomer or derivative of ecgonine;
>
> (3) A salt, compound, derivative, or preparation of a substance identified in division (X)(1) or (2) of this section that is chemically equivalent to or identical with any of those substances, except that the substances shall not include decocainized coca leaves or extraction of coca leaves if the extractions do not contain cocaine or ecgonine.

Because the definition of "cocaine" does not include a "mixture," the Sixth District concluded that "a defendant may be held liable for cocaine offenses under R.C. 2925.11 for only that portion of the disputed substance that is chemically identified as cocaine." 2015-Ohio-461 at ¶ 45.

{¶ 16} The Second District in *Smith*, 2011-Ohio-2568, at ¶ 12, rejected the defendant's argument that the weight of "the drug involved" should not include

parts of the substance other than the actual cocaine. Smith's argument centered on the definition of "drug" incorporated from 4729.01(E)(3) in R.C. 2925.01(C), which includes "[a]ny article, *other than food*, intended to affect the structure or any function of the body of humans or animals." (Emphasis added.) Because cocaine may be mixed with food like baking soda, sugar, or corn starch, Smith had argued that the state was required to prove the weight of the cocaine that he had sold apart from any food. 2011-Ohio-2568 at ¶ 11. The Second District disagreed, stating that the drug involved was an off-white chunky substance containing cocaine and was not typical food or drink. *Id.* at ¶ 12. It also relied on some pre-H.B. 86 cases to conclude that the state was not required to segregate the cocaine from the other ingredients in the substance to prove the weight of the drug. *Id.*

{¶ 17} The state fails to point to any ambiguity in the statute. Without that, we must simply apply the statute as it is written, without delving into legislative intent. Although the state argues that the Sixth District's interpretation would lead to absurd or unjust results and that cocaine should not be treated differently from any other controlled substance, we cannot agree. Subsections (C)(4)(b) through (f) are written differently from the other subsections of R.C. 2925.11: the term "drug involved" is modified by the words "of cocaine." The state is quick to call this a *faux pas* on the part of the General Assembly when it amended R.C. 2925.11(C)(4) in H.B. 86, but we are not as sure. As an amicus arguing in support of Gonzales points out, while H.B. 86 eliminated the separate sentencing scheme for crack cocaine, it also significantly lowered the amount of cocaine necessary to trigger an elevation in sentence. H.B. 86, however, was designed to reduce prison sentences for nonviolent offenders, and lowering the amount of cocaine needed to elevate a prison sentence would be inconsistent with this purpose, according to the Ohio Public Defender. If the statute requires the state to prove the weight of the actual cocaine, however, and not simply the weight of a compound or mixture containing cocaine, then the legislative objectives are accomplished.

**{¶ 18}** The dissent contends that we are ignoring the reality that powder cocaine is a compound of several substances. The chemical makeup of cocaine is not the issue, however. The question is whether the filler material added to cocaine is considered part of the drug involved for violations of R.C. 2925.11(C)(4). For a violation of R.C. 2925.11(C)(4)(a), the amount of filler material versus the amount of cocaine is irrelevant because there is no weight requirement. Possession of any amount of cocaine is a fifth-degree felony. To be guilty of a higher degree felony, however, R.C. 2925.11(C)(4)(b) through (f) require that a person possess a certain amount "of cocaine."

**{¶ 19}** The dissent also contends that a "compound" is the same thing as a "mixture," and therefore the definition of "cocaine" encompasses cocaine mixed with filler material. But if "mixture" is the same as "compound," the General Assembly would not have needed to put both terms into the definitions of marihuana or methamphetamine. *See* R.C. 2925.01(AA) and 3719.01(O); R.C. 2925.01(II). The rules of statutory construction require courts to give each word in a statute or regulation effect. *E. Liverpool v. Columbiana Cty. Budget Comm.*, 105 Ohio St.3d 410, 2005-Ohio-2283, 827 N.E.2d 310, ¶ 8. We therefore cannot consider a "compound" to be a "mixture" of cocaine and filler material.

**{¶ 20}** We find nothing in the language of R.C. 2925.11(C)(4)(f) to be ambiguous. By its plain terms, the statute prohibits the possession of 100 grams or more of cocaine. In order to read the statute as the state would have us do, we would need to either delete the phrase "of cocaine" or add the phrase "or a compound, mixture, preparation of substance containing cocaine." While we recognize that this interpretation of R.C. 2925.11(C)(4)(f) may make the prosecution of possession of cocaine offenses harder for the state because state laboratories are not equipped or certified to do a purity analysis, it does not render prosecutions impossible. In another case from the Sixth District, the state used laboratory reports from a facility in Chicago, Illinois that specified the total weight

of the substances involved and a percent of actual cocaine in those substances. *See State v. Sanchez*, 6th Dist. No. S-14-030, 2016-Ohio-542, ¶ 15.

**{¶ 21}** The dissent alleges that this holding conflicts with our decisions in *State v. Chandler*, 109 Ohio St.3d 223, 2006-Ohio-2285, 846 N.E.2d 1234, and *Garr v. Warden, Madison Corr. Inst.*, 126 Ohio St.3d 334, 2010-Ohio-2449, 933 N.E.2d 1063. But both cases are easily distinguishable based on their facts. In *Chandler*, the substance that was sold as crack cocaine was actually baking soda. We held that imposing the penalty enhancement as a major drug offender when the substance did not contain any cocaine was contradictory to the language of R.C. 2925.03(C)(4)(g) (trafficking offenses). Because there was no cocaine involved, we were not presented with the question whether the weight of a mixed substance that included cocaine was sufficient to declare a defendant a major drug offender. Similarly, *Garr* involved an offer-to-sell drug-trafficking case in which no drugs were recovered during the investigation of the crime. Again, because there was no substance to be weighed, we were not asked whether the total weight of the substance or the weight of actual cocaine counted.

**{¶ 22}** While the state's arguments concerning legislative intent and the consequences of the Sixth District's interpretation are persuasive in regard to what the statute *should* say, the arguments are insufficient to overcome what the statute clearly does say. The remedy is to be found in the legislature, not a tortured judicial interpretation of a statute unambiguous on its face. Given the unambiguous language of the statute, we answer the certified conflict question in the affirmative and hold that in prosecuting cocaine-possession offenses under R.C. 2925.11(C)(4)(b) through (f) involving mixed substances, the state must prove that the weight of the actual cocaine, excluding the weight of any filler materials, meets the statutory threshold.

**{¶ 23}** The judgment of the Sixth District Court of appeals is affirmed.

Judgment affirmed.

PFEIFER and O'NEILL, JJ., concur.

KENNEDY, J., concurs in judgment only, with an opinion.

O'CONNOR, C.J., dissents, with an opinion joined by O'DONNELL and FRENCH, JJ.

_____

**KENNEDY, J., concurring in judgment only.**

{¶ 24} I concur only in the judgment of the lead opinion today because I must.

{¶ 25} "Where a statute is found to be subject to various interpretations, * * * a court called upon to interpret its provisions may invoke rules of statutory construction in order to arrive at legislative intent." *Meeks v. Papadopulos,* 62 Ohio St.2d 187, 190, 404 N.E.2d 159 (1980). "The object of judicial investigation in the construction of a statute is to ascertain and give effect to the intent of the lawmaking body which enacted it." *Slingluff v. Weaver*, 66 Ohio St. 621, 64 N.E. 574 (1902), paragraph one of the syllabus.

{¶ 26} However, the intent of the General Assembly must be determined primarily from the language of the statute itself. *Stewart v. Trumbull Cty. Bd. of Elections*, 34 Ohio St.2d 129, 130, 296 N.E.2d 676 (1973). If the statute is ambiguous, the court "may" consider the "matters" listed in R.C. 1.49 to identify the legislature's intent: the object that the legislature sought to attain, the circumstances surrounding the law's enactment, legislative history, preceding law, the consequences of constructing the law in a certain way, and the statute's administrative construction. *Id.*

{¶ 27} Through enactment of R.C. 2925.11(A), the General Assembly set forth a general provision that no person shall "knowingly obtain, possess, or use a controlled substance or a controlled substance analog." Thereafter, the legislature enacted specific prohibitions based on the class and amount of a controlled

substance or controlled substance analog in the offender's possession. *See* R.C.2925.11(C).

{¶ 28} At issue here is R.C. 2925.11(C)(4), which provides, "If the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine, whoever violates division (A) of this section is guilty of possession of cocaine." The General Assembly also enacted specific penalty provisions related to the possession of cocaine which, depending on the weight of the drug involved, categorized possession into classifications by a degree of felony. *See* R.C. 2925.11(C)(4)(b) through (f).

{¶ 29} I disagree with the conclusions of the lead opinion and the dissent that the language of the statute is unambiguous. When the language of the specific prohibition by class of controlled substance is read in conjunction with the corresponding penalty provision, the statute is ambiguous. *See Symmes Twp. Bd. of Trustees v. Smyth*, 87 Ohio St.3d 549, 553, 721 N.E.2d 1057 (2000) (conflict among the appellate courts regarding the meaning of statutory phrase suggests that the language is ambiguous). The specific penalty provision uses the phrase "grams of cocaine." R.C. 2925.11(C)(4)(b) through (f). As noted in the lead opinion, the definition of "cocaine" does not include a mixture of the drug. Opinion at ¶ 15. *See* R.C. 2925.01(X). Therefore, if the General Assembly had intended to classify possession by degree of felony to include the "compound, mixture, preparation, or substance containing cocaine," then it could have easily included that language in the provision or changed the definition of "cocaine" to include this language. However, the legislature did not. The General Assembly limited the classification by degree of felony to "grams of cocaine" only.

{¶ 30} The state of Ohio argues that "the drafters made a probable slight faux pas" in amending this provision, and to "read the statute in any * * * way" other than that the General Assembly requires a mere "aggregate weight" test "belies the legislative intent of the law."

14

{¶ 31} When a statute is ambiguous, R.C. 1.49 allows us to consider other matters to determine the intention of the General Assembly, including legislative history. "Although this court is not bound by" the analyses prepared by the Ohio Legislative Service Commission, "we may refer to them when we find them helpful and objective." *Meeks*, 62 Ohio St.2d at 191, 404 N.E.2d 159.

{¶ 32} The Ohio Legislative Service Commission recognized that one aspect of 2011 Am.Sub.H.B. No. 86 ("H.B. 86") was to eliminate "the distinction between the criminal penalties provided for drug offenses involving crack cocaine and * * * powder cocaine," but a second aspect of the law was to remove the presumption of a term of incarceration for fourth-degree felony drug offenses. Ohio Legislative Service Commission, Bill Analysis, Am.Sub.H.B. 86, as passed by the General Assembly, at 9.

{¶ 33} Heralded as a significant piece of legislation that would drastically reduce prison population by ensuring that low-level nonviolent drug offenders would not be subjected to mandatory prison terms, the director of the Department of Rehabilitation and Correction called H.B. No. 86 "a day of hope." Johnson, *Law to Cut Prison Population*, Columbus Dispatch (June 30, 2011) 1B.

{¶ 34} In achieving this reduced prison population by eliminating presumptive prison sentences for some nonviolent drug offenders, the requirement that prosecutors prove the "grams of cocaine" signals the legislature's intention: only drug offenders possessing the specific grams of pure cocaine identified in R.C. 2925.11(C)(4) were eligible for incarceration, not drug offenders whose product had a detectable amount. *Compare State v. Chandler*, 109 Ohio St.3d 223, 2006-Ohio-2285, 846 N.E.2d 1234, syllabus.

{¶ 35} The General Assembly specifically used the language "grams of cocaine" without any further qualifiers. If the General Assembly had intended to include the "compound, mixture, preparation, or substance containing cocaine," R.C. 2925.11(C)(4), into the weight threshold for punishing possession of cocaine,

then the General Assembly has the opportunity to specify a different remedy or change the definition of "cocaine" to include this language. "It is not the role of the courts 'to establish legislative policies or to second-guess the General Assembly's policy choices.' " *Stetter v. R.J. Corman Derailment Servs., L.L.C.*, 125 Ohio St.3d 280, 2010-Ohio-1029, 927 N.E.2d 1092, ¶ 35, quoting *Groch v. Gen. Motors Corp.,* 117 Ohio St.3d 192, 2008-Ohio-54, 883 N.E.2d 377, ¶ 212. "[O]ur role, as members of the judiciary, requires fidelity to the separation-of-powers doctrine." *State v. South*, 144 Ohio St.3d 295, 2015-Ohio-3930, 42 N.E.3d 734, ¶ 28 (O'Conner, C.J., concurring). "[W]e must respect that the people of Ohio conferred the authority to legislate solely on the General Assembly." *Id.*, citing *Sandusky City Bank v. Wilbor*, 7 Ohio St. 481, 487-488 (1857), and Article II, Section 1, Ohio Constitution.

{¶ 36} Therefore, I concur in judgment only.

_____

**O'CONNOR, C.J., dissenting.**

{¶ 37} Under R.C. 2925.11, drug possession is penalized according to the amount of the drug involved. The lead opinion's interpretation introduces a purity or weight requirement for cocaine possession that is not found in the language of the statute or supported by the reality of how cocaine is produced, distributed, or consumed. Thus, I respectfully dissent.

{¶ 38} Powder cocaine is a compound of several ingredients:

[C]ocaine powder is derived by dissolving the coca paste in hydrochloric acid and water. To this mixture a potassium salt (potassium permanganate) is added. The potassium salt causes undesired substances to separate from the mixture. These substances are then discarded. Ammonia is added to the remaining solution, and a solid substance—the powder cocaine—separates

from the solution. The powder cocaine is removed and allowed to dry. Prior to distribution, powder cocaine typically is "cut," or diluted, by adding * * * one or more adulterants: sugars, local anesthetics (*e.g.*, benzocaine), other drugs, or other inert substances. Consequently, the purity level of powder cocaine may vary considerably.

(Footnotes omitted.) United States Sentencing Commission, *Special Report to the Congress: Cocaine and Federal Sentencing Policy* 12 (Feb.1995), http://www.ussc.gov/research/congressional-reports/1995-report-congress-cocaine-and-federal-sentencing-policy (accessed Oct. 25, 2016). *See also* Ohio Substance Abuse Monitoring Network, *Drug Abuse Trends in the Cleveland Region* 81 (Jan.-June 2014), http://www.documentcloud.org/documents/1659531-drug-abuse-trends-in-the-cleveland-region.html#document/p1 (accessed Nov. 2, 2016) (cocaine powder in the Cleveland area is cut with lidocaine, procaine, and levamisole, a livestock dewormer); Ohio Substance Abuse Monitoring Network, *Drug Abuse Trends in the Columbus Region* 102 (Jan.-June 2014), http://mha.ohio.gov/Portals/0/assets/Research/OSAM-TRI/Columbus%20Jan%202015.pdf (accessed Nov. 2, 2016) (in the Columbus area, cocaine is cut with lidocaine, procaine, levamisole, baby formula, and "anything that is white and powdered").

{¶ 39} Purity levels of powder cocaine trend downward as the drug is separated into smaller volumes for distribution. For example, in 1995, when purity levels were considered relatively high, a kilogram of cocaine powder averaged 85 percent pure, an ounce averaged 70 percent pure, and a gram averaged 63 percent pure. Abstract, National Criminal Justice Reference Serv., United States Justice Dept., Drug Enforcement Administration, *Illegal Drug Price/Purity Report, United States: Jan.1992—Mar.1995* (1995), https://www.ncjrs.gov/App/publications

/abstract.aspx?ID=158868 (accessed Nov. 16, 2016). Thus, even in kilogram volume, much more than would typically be possessed for individual consumption, powder cocaine is not pure.

{¶ 40} Importantly, the fillers, or adulterants, that reduce the purity level of cocaine along the distribution chain are not intended to be removed before consumption. Quality varies, but this variation does not change the fact that a range of concentrations renders usable cocaine. *See Drug Abuse Trends in the Columbus Region* at 102 (A participant in the focus group interviews stated, " '[Quality of cocaine] just depends who you get it from * * * [current quality is] garbage' "). (Brackets sic and emphasis deleted.) The fillers are inherent in the usable drug. That anything less than what is actually sold and consumed as cocaine would determine the penalty for cocaine possession is illogical and contrary to reality.

{¶ 41} Indeed, the plain language of the statute demonstrates that the General Assembly understood the composition of cocaine and the nature of its distribution, because it defined the offense and the drug in broad terms: "If the drug involved in the violation is cocaine *or a compound, mixture, preparation, or substance containing cocaine,* whoever violates division (A) of this section is guilty of possession of cocaine." (Emphasis added.) R.C. 2925.11(C)(4).

{¶ 42} This description is consistent with the General Assembly's definition of cocaine to include "[a] salt, *compound*, derivative, or preparation of [a cocaine salt, isomer, or derivative]." (Emphasis added.) R.C. 2925.01(X)(3). *See also* R.C. 3719.41 (Schedule II(A)(4)). The Sixth District concluded that this definition of cocaine does not include the entire mixture. 2015-Ohio-461 at ¶ 45. But the statutory definition of cocaine plainly encompasses a compound that includes cocaine. And "compound" means "something (as a substance * * *) that is formed by a union of * * * ingredients." Webster's Third New International Dictionary 466 (1986). In other words, a compound is a mixture.

18

**{¶ 43}** The lead opinion agrees with the appellate court's analysis, ignoring definitions to achieve an overly narrow reading of the statute. Specifically, the lead opinion concludes that in the penalty portion of the statute, "[i]f the amount of the drug involved equals or exceeds one hundred grams of cocaine," the term "drug involved" is modified by the words "of cocaine." Opinion at ¶ 17. The opinion further concludes that the term "of cocaine" means "actual cocaine, excluding the weight of any filler materials." *Id*. at ¶ 22. And the court opinion asserts that a "compound" and "mixture" of cocaine are distinct. Court opinion at ¶ 19.

**{¶ 44}** But the statutory definition of "cocaine" is a "compound, derivative, or preparation" containing cocaine. R.C. 2925.01(X)(3). It is a stretch of interpretive muscle to conclude that a cocaine mixture—which according to the court opinion is cocaine and filler material—in the form that is to be consumed is not a cocaine "compound, derivative, or preparation." Indeed, it is just that: cocaine.

**{¶ 45}** "[W]ords in a statute do not exist in a vacuum. *D.A.B.E., Inc. v. Toledo-Lucas County Bd. of Health,* 96 Ohio St.3d 250, 2002-Ohio-4172, 773 N.E.2d 536, ¶ 19. The words must be read in context and construed according to common usage. R.C. 1.42. And we must interpret the statute as a whole, giving effect to all the words in the statute. *Commerce & Indus. Ins. Co. v. Toledo*, 45 Ohio St.3d 96, 102-103, 543 N.E.2d 1188 (1989).

**{¶ 46}** Doing so here requires us to give effect to the statutory definitions of "cocaine" and "drug involved," which include a mixture. Read as a whole, the statute clearly seeks to penalize the amount of compounded cocaine in the offender's possession, regardless of whether the form of the drug is pure or mixed.

**{¶ 47}** But under the court opinion's interpretation of the statute, it does not matter how much usable drug Gonzales possessed. Instead, because concentration levels vary considerably (but are almost always less than 100 percent), the state must—in every case—reverse engineer the compound or mixture of powder

cocaine to separate its parts and determine purity, even when the state has proven the substance to be cocaine under the statutory definition.[2] The court opinion would create an arbitrary purity distinction for cocaine-possession offenses even though the clear intent of the statute is to establish the appropriate penalty for cocaine possession by the weight of the drug compound involved. The greater the "amount of the drug involved," not the purity level of the drug involved, the greater the penalty. R.C. 2925.11(C)(4).

{¶ 48} The lead opinion's conclusion that the General Assembly would treat the weight of cocaine differently from how the drug is treated and sold on the street renders the statute's penalty-by-weight distinctions irrelevant. For example, imagine two drug offenders who each possess 150 grams of powder cocaine. The first has a 60-percent pure product and the second a 70-percent pure product. Under the lead opinion's arbitrary distinction of separating "cocaine" from filler, they would be penalized differently. The first would possess a net weight of 90 grams of cocaine salt and be subject to a first-degree felony with a prison term chosen among those prescribed for a first-degree felony. *See* 2925.11(C)(4)(e). The second offender would possess 105 net grams of cocaine salt and, along with the first-degree felony conviction, would be labeled a major drug offender and subject to a mandatory maximum prison term. *See* 2925.11(C)(4)(f). But both offenders possessed 150 grams of cocaine, and the small purity difference would mean little

---

[2] Gonzales insists he is not arguing that the state must prove purity of a cocaine mixture. But that is exactly the effect of having to separate "actual cocaine" from fillers. For example, if the cocaine at issue is 10 percent pure, then it is 90 percent filler. In other words, a defendant who possesses 100 grams of usable cocaine powder that is 10 percent pure would be penalized under the statute for possessing only 10 grams, rather than 100 grams. *See also People v. McLaurin,* 157 Misc.2d 783, 785, 598 N.Y.S.2d 911 (1993) (describing the procedures used by the New York City Police Laboratory to determine the "pure weight" of a cocaine mixture by calculating the aggregate weight, grinding the contents of the powder into a homogenous mixture, extracting small sample quantities across the mixture, testing the samples by gas chromatography to determine purity, and then calculating "pure weight" by multiplying the aggregate weight and the estimated purity).

or nothing to the buyer or user. If the General Assembly had been concerned about purity, rather than total weight, it would have said so.

{¶ 49} We are aware of only two states that require purity testing of cocaine to determine the penalty level of the offense. In both, the relevant statutes expressly require pure weight. For example in Georgia, a cocaine-*trafficking* offense exists for "any mixture with a purity of 10 percent or more of cocaine." Ga.Code.Ann. Section 16-13-31(a). In New York, a possession offense can be based on having 500 milligrams or more of cocaine based on a "pure weight" standard, or by having an aggregate weight of one-eighth ounce or more of cocaine regardless of the purity of the drug. N.Y. Penal Law Section 220.06.

{¶ 50} Ohio's cocaine-possession statute resembles neither of these state's schemes. Thus, we note these examples to demonstrate how rarely a legislature adopts such an approach and the clear intent it expresses when it does.

{¶ 51} Additionally, the lead opinion does not adequately explain why it today interprets the cocaine-possession statute differently from how this court interpreted substantially similar language in an earlier cocaine-trafficking statute, R.C. 2925.03(C)(4)(g), 2000 Am.H.B. No. 528, 148 Ohio Laws, Part III, 5767, 5772, in 2006.[3] Quoting that statute, in *State v. Chandler*, 109 Ohio St.3d 223, 2006-Ohio-2285, 846 N.E.2d 1234, ¶ 18, we held that the penalty provisions for cocaine trafficking required that "the substance involved in the violation is to *be* cocaine or, at the very least, a 'compound, mixture, preparation, or substance *containing* cocaine.' " *See also Garr v. Warden, Madison Corr. Inst.,* 126 Ohio

---

[3] At the time, the statute stated, "If the amount of the drug involved * * * exceeds one hundred grams *of crack cocaine* * * *, trafficking in cocaine is a felony of the first degree * * *." (Emphasis added.) Although the cocaine-trafficking and cocaine-possession statutes no longer make a distinction between crack cocaine and other forms of the drug, the language in both statutes today that requires a certain amount "of cocaine" for a mandatory prison sentence is not materially different. *Compare* R.C. 2925.11(C)(4)(f) (possessing 100 or more grams of cocaine is a first-degree felony with a mandatory prison sentence) with 2925.03(C)(4)(g) (trafficking in 100 grams or more of cocaine is a first-degree felony with the same mandatory prison sentence).

St.3d 334, 2010-Ohio-2449, 933 N.E.2d 1063, ¶ 28 (limiting *Chandler* to those cases in which the substance offered for sale is recovered and subjected to testing). And, despite the opinion's insistence that *Chandler* is distinguishable, that case rested on statutory interpretation, not facts. And the court announced in its syllabus the legal principle that, to be sentenced as a major drug offender, "[a] substance offered for sale must contain some detectable amount of the relevant controlled substance." *Chandler* at syllabus. The lead opinion identifies no basis for announcing a divergent statutory interpretation of the same language in the cocaine-possession statute. And until the appellate court's decision in this case, *Chandler* has remained a basis for trafficking and possession convictions that have relied on the total weight of the substance containing the drug. *See, e.g.*, *State v. Jackson*, 9th Dist. Lorain No. 15CA010828, 2016-Ohio-7637, ¶ 17, 19; *State v. Reese*, 5th Dist. Muskingum No. CT2015-0046, 2016-Ohio-1591, ¶ 6. We have accepted a jurisdictional appeal in *Reese* and have held it for the resolution of this case. 146 Ohio St.3d 1427, 2016-Ohio-4606, 52 N.E.3d 1203.

{¶ 52} Here, there is no dispute that the substance in the baggie was cocaine. The only dispute is how much of the contents of the baggie was filler. As a result of the lead opinion's interpretation, the offense level for cocaine possession will be determined by an amount that is less than the amount of cocaine in the offender's possession. This result gives effect to neither the statute as a whole nor the intent of the legislature as expressed in the words of the statute. Because the plain language of the statute requires us to answer the certified question in the negative and hold that the offense level is determined by the total weight of the cocaine plus any filler, I dissent.

O'DONNELL and FRENCH, JJ., concur in the foregoing opinion.

_____

Paul A. Dobson, Wood County Prosecuting Attorney, and David T. Harold and Gwen K. Howe-Gebers, Assistant Prosecuting Attorneys, for appellant.

Mayle Ray & Mayle L.L.C., Andrew R. Mayle, Jeremiah S. Ray, and Ronald J. Mayle, for appellee.

Michael DeWine, Attorney General, Eric E. Murphy, State Solicitor, Michael J. Hendershot, Chief Deputy Solicitor, and Hannah C. Wilson, Deputy Solicitor, urging reversal for amicus curiae Ohio Attorney General Michael DeWine.

Timothy J. McGinty, Cuyahoga County Prosecuting Attorney, and Daniel T. Van, Assistant Prosecuting Attorney, urging reversal for amici curiae Ohio Prosecuting Attorney's Association and Cuyahoga County Prosecutor's Office.

Timothy Young, Ohio Public Defender, and Carrie Wood, Assistant State Public Defender, urging affirmance for amicus curiae Office of the Ohio Public Defender.

_____